520 A.2d 743

**In re PATRICK A.**

**No. 561, Sept.Term, 1986.**

Court of Special Appeals of Maryland.

Feb. 5, 1987.

Certiorari Granted June 9, 1987.

**192**

Ronald M. Levitan, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Sandra A. O'Connor, State's Atty. for Baltimore County and Howard B. Merker, Deputy State's Atty. for Baltimore County, Towson, on the brief), for appellant.

Nancy S. Forster, Asst. Public Defender (Alan H. Murrell, Public Defender on the brief) Baltimore, for appellee.

Argued before WEANT, BLOOM and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

The Circuit Court for Baltimore County, sitting as a Juvenile Court, dismissed a juvenile delinquency petition and a waiver petition concerning Patrick A. because the State's Attorney acted before the juvenile services intake officer referred the matter to the State's Attorney. The State asks this Court to vacate the trial court's decision.

On January 10, 1986, the Juvenile Services Administration (J.S.A.) received a complaint from the Baltimore County Police Department concerning Patrick A. This complaint was sent by the police in accordance with their accepted practice in juvenile cases. On January 16, the State's Attorney's Office for Baltimore County filed a delinquency petition alleging that Patrick A. possessed and distributed a controlled dangerous substance, marijuana. That same day, the State's Attorney also filed a petition requesting a waiver of juvenile jurisdiction in order to try Patrick A. as

an adult. J.S.A. received notice from the State's Attorney of these petitions the following day. On January 29, an intake officer with J.S.A. met with Patrick A. to prepare a waiver recommendation to aid the court in ruling on the waiver request. *See* Rule 913 b. The intake officer conceded he did not refer the matter to the State's Attorney and did not meet earlier with Patrick A. because of the notice from the State's Attorney.

On April 1, 1986, in a hearing before the circuit court, Patrick A. moved to dismiss the delinquency and waiver petitions, contending that they were filed contrary to the statutory procedure for the handling of juvenile matters. The court agreed with Patrick A. and dismissed both petitions.

The State's Attorney filed a motion to vacate the dismissals which the trial judge denied. The State appeals to this Court contending

"[t]he trial court erred by dismissing the petitions in this case merely because the State's Attorney acted before the intake officer forwarded the complaint."

## I. STATUTORY MACHINERY

The statute codifying juvenile procedures was substantially altered in 1982. Although the current framework controls our decision in this case, we need to set out the former procedure to aid in understanding the merits of the issue presented. Prior to 1982, Md.Cts. & Jud.Proc.Code Ann. § 3–810 (1974, 1980 Repl. Vol.) set out juvenile procedures and the role of the intake officer in processing delinquency cases. We set forth § 3–810 in pertinent part:

"(a) Any person or agency having knowledge of facts which may cause a person to be subject to the jurisdiction of the court may file a complaint with the intake officer of the court having proper venue.

"(b) In considering the complaint, the intake officer shall make a preliminary inquiry within 15 days as to whether the court has jurisdiction and whether judicial

action is in the best interests of the public or the child. He may, after such inquiry and in accordance with this section, (i) authorize the filing of a petition, (ii) conduct a further investigation into the allegations of the complaint, (iii) propose an informal adjustment of the matter, or (iv) refuse authorization to file a petition.

"(c) The intake officer may authorize the filing of a petition if, based upon the complaint and his preliminary inquiry, he concludes that the court has jurisdiction over the matter and that judicial action is in the best interests of the public or the child.

\*    \*    \*    \*    \*    \*

"(e) The intake officer may propose an informal adjustment of the matter if based on the complaint, his preliminary inquiry, and such further investigation as he may make, he concludes that the court has jurisdiction but that an informal adjustment, rather than judicial action, is in the best interests of the public and the child.... The intake officer shall not proceed with an informal adjustment unless all parties to the proceeding consent to [the conditions and procedures set out by the intake officer].

"(f) ... If all of the parties do not consent to an informal adjustment, or such adjustment cannot, in the judgment of the intake officer, be completed successfully, he shall authorize the filing of a petition or deny authorization to file a petition pursuant to subsection (g).

"(g) If based upon the complaint, his preliminary inquiry, and such further investigation as he may make, the intake officer concludes that the court has no jurisdiction, or that neither an informal adjustment nor judicial action is appropriate, he may deny authorization to file a petition....

"(h) If the complaint alleges the commission of a delinquent act [1] and the intake officer denies authorization to

---

1. A delinquent act was and is defined as "an act which would be a crime if committed by an adult." Md.Cts. & Jud.Proc.Code Ann. § 3–801(k) (1974, 1980 & 1984 Repl. Vols.).

file a petition, the complainant ... may appeal the denial to the State's attorney. The State's attorney shall review the denial. If he concludes that the court has jurisdiction and that judicial action is in the best interests of the public or the child, he may file a petition. This petition shall be filed within 15 days of the receipt of the complainant's appeal."

Section 3–812(b), also of that 1980 Courts and Judicial Proceedings Code, explained in part the general procedures to be followed by the State's Attorney's Office for the filing of a petition of delinquency:

"(b) Petitions alleging delinquency ... shall be prepared and filed by the State's attorney. A petition alleging delinquency shall be filed within 15 days after the receipt of a referral from the intake officer. All other petitions shall be prepared and filed by the intake officer."

Under the statutory provisions in force prior to the amendment of § 3–810 in 1982, there is no question but that in regard to whether to file a delinquency petition the authority of the State's Attorney was, to a large extent, subordinate to that of the intake officer. The intake officer, rather than the State's Attorney, received complaints. The intake officer made a preliminary inquiry to determine whether the court had jurisdiction and whether judicial action was in the best interests of the juvenile or the public. The intake officer then could authorize filing a delinquency petition, conduct a further investigation, propose an informal adjustment, or refuse authorization to file a petition. If the officer determined a petition was in order, the State's Attorney then had the authority to file a petition after receipt of the intake referral. If the intake officer decided instead that an informal adjustment was appropriate, the matter could be resolved if all parties to the proceeding consented to the conditions and procedures set out for the adjustment process. In that case, the State's Attorney was essentially precluded from filing a petition. If the intake officer instead denied authorization to file a petition, the

State's Attorney could review that decision only if the individual or agency who originally complained to J.S.A. appealed to the State's Attorney. The State's Attorney's Office then had the authority to decide if judicial action was in the best interests of the public or the child and file a delinquency petition if appropriate. If no one appealed, however, the State's Attorney did not have authority to file a petition.

In 1982, faced with escalating juvenile crime, the Legislature enacted Chapter 469 which amended this procedure to enlarge the participatory role of the State's Attorney's Office when a juvenile 16 years of age or older is accused of committing a felony. 1982 Md. Laws 469. The Legislature added several subsections to augment the authority of the State's Attorney. Focusing on § 3–810(b), the Legislature retained the section in this new statutory framework, but added three new subsections. Former subsection (b) was redesignated (b)(1) and remained largely intact. The revision, however, did make subsection (b)(1) subject to contrary provisions which were added to § 3–810(b), specifically subsections (b)(3)(i) and (ii):

"(b)(1) Except as otherwise provided in this subsection, in considering the complaint, the intake officer shall make a preliminary inquiry within 15 days as to whether the court has jurisdiction and whether judicial action is in the best interests of the public or the child. He may, after such inquiry and in accordance with this section, (i) authorize the filing of a petition, (ii) conduct a further investigation into the allegations of the complaint, (iii) propose an informal adjustment of the matter, or (iv) refuse authorization to file a petition."

Subsections (b)(3) and (4) were new and impacted on the powers of the intake officer set out under subsection (b)(1): [2]

---

**2.** Subsection (b)(2) was also added which concerns a child in need of assistance. This subsection is not relevant to the case *sub judice.*

"(3)(i) If a complaint is filed that alleges the commission of a delinquent act by a child who is 16 years old or older, which would be a felony enumerated in Article 27, § 441(e) of the Code [3] if committed by an adult, the intake officer shall immediately forward the complaint to the State's Attorney.

(ii) If a complaint is filed that alleges the commission of a delinquent act by a child who is 16 years old or older, which would be a felony other than one enumerated in Article 27, § 441(e) of the Code if committed by an adult, and if the intake officer has denied authorization to file a petition, the intake officer shall immediately:

1. Forward the complaint to the State's Attorney; and

2. Forward a copy of the entire intake case file to the State's Attorney with information as to any and all prior intake involvement with the child.

(4) The State's Attorney shall make a preliminary review as to whether the court has jurisdiction and whether judicial action is in the best interests of the public or the child.... After the preliminary review the State's Attorney shall within 30 days of the receipt of the complaint by the State's Attorney, unless the court extends the time:

(i) File a petition;

(ii) Seek a waiver under § 3–817 of this article; [4]

---

**3.** Md.Code Ann. Art. 27, § 441(e) (1957, 1982 Repl.Vol., 1986 Cum. Supp.) enumerates those offenses considered "crimes of violence": "abduction; arson; burglary, including common-law and all statutory and storehouse forms of burglary offenses; escape; housebreaking; kidnapping; manslaughter, excepting involuntary manslaughter; mayhem; murder; rape; robbery; robbery with a deadly weapon; sexual offense in the first degree; and sodomy; or an attempt to commit any of the aforesaid offenses; or assault with intent to commit any other offense punishable by imprisonment for more than one year."

**4.** Md.Cts. & Jud.Proc.Code Ann. § 3–817 (1974, 1984 Repl.Vol.) provides that a juvenile court may waive exclusive jurisdiction over a delinquency petition in certain specified cases from the juvenile system to that of the criminal court.

(iii) Refer the complaint to the Juvenile Services Administration for informal disposition; or

(iv) Dismiss the complaint."

Prior to the 1982 changes, § 3–810 did not differentiate between the intake procedure for felony and misdemeanor cases. Now as codified, based on this distinction the statute in some instances permits the State's Attorney to proceed regardless of the action of J.S.A. The statute also alters the stage at which the State's Attorney may act based on the type of the alleged offense—enumerated felonies (those delinquent acts governed under subsection (b)(3)(i)), nonenumerated felonies (those delinquent acts governed under subsection (b)(3)(ii)), or misdemeanors.

As we stated, before the 1982 changes, J.S.A. could essentially "close-out" a juvenile case by way of successful completion of the informal adjustment process. A juvenile case could also be dismissed by J.S.A. In the latter case, the State would have no control over the decision unless an appeal by the complainant was taken. In light of the number of "close-outs" and the increase in teenage felonies, the changes to § 3–810 were proposed. In a memorandum, the Chief Legislative Officer described the impetus behind those 1982 changes:

"The repetitive juvenile offender represents a small but significant percentage of juvenile offenders because of the large number of delinquent acts or crimes in which he or she is involved. The disproportionate number of delinquent acts attributable to this 'hard core' segment of the juvenile offender population justifies an attempt to bring repetitive acts to the attention of a prosecutor who is familiar with the impact of the evidentiary and other legal aspects of a particular case in order that the appropriate alternatives are considered.

      \*     \*     \*     \*     \*     \*

"Many of the complaints which would be forwarded to the State's Attorney under this bill are already being handled in this fashion. Guaranteeing this procedure by

statute would allow all such complaints to be brought to the attention of those officials of the law enforcement community responsible for the prosecution of those who choose to transgress our laws."

One proposal made in the General Assembly which failed would have required a prior finding of delinquency before an alleged juvenile felony case could be forwarded to the State's Attorney. Alexander Palenscar, the Assistant State's Attorney of Baltimore City, in a memorandum expressed his opposition to that proposal. He explained that it

> "would legislatively sanction J.S.A. close-outs of any number of felonies before sending a charge to Juvenile Court—since only J.S.A. can initiate the process, with rare exceptions, resulting in a finding of delinquency."

Moreover, he felt the public would be "properly outraged" with a procedure that encouraged J.S.A. to continue its policy of close-outs of felonies. He concluded that the proposed amendment would "gut" any sincere attempt to resolve a part of the juvenile crime problem.

When Chapter 469 was enacted, § 3–810 as it had existed was left essentially unaltered in this new version as were the mechanics for the filing of a petition by the State under § 3–812.[5] With this statutory scheme and the 1982 changes in mind, we turn to the case *sub judice.*

## II. VIOLATION OF PROCEDURES

Patrick A., 16 years old, was charged with committing a felony not enumerated under § 441(e). Thus, § 3–810(b)(3)(ii) was the operative Code provision. Referring to § 3–810(b)(3)(ii) and § 3–812, the court ruled that since the State's Attorney filed the delinquency and waiver petitions *before* the matter was processed by the intake officer and

---

**5.** The time limit for filing a petition by the State after receipt of referral from J.S.A. was extended from 15 days to 30 days. Md.Cts. & Jud.Proc.Code Ann. § 3–812(b) (1974, 1984 Repl.Vol., 1986 Cum. Supp.).

the complaint and intake file forwarded, the State violated the statutory procedures for handling nonenumerated felonies. The trial court selected dismissal as the appropriate sanction, noting that the State violated a scheme meticulously designed by the Legislature.

The State concedes that it acted before the intake officer investigated this matter, denied authorization to file a petition of delinquency, referred this matter to the State's Attorney, and forwarded the intake file. Relying on the legislative history behind the 1982 changes, however, the State asserts that dismissal was inappropriate since the new subsections were adopted expressly to give the State's Attorney's Office greater control over whether to file a petition in teenage felony cases. The State assures us, and it may well have been, that it would have decided to file the delinquency and waiver petitions regardless of J.S.A.'s action. We find the State's action in this case is unacceptable.

We recognize the Legislature intended by the 1982 additions that when a juvenile 16 years of age or older allegedly committed a felony, either a felony enumerated under Art. 27, § 441(e) or one not enumerated under that section, the State's Attorney was to have input into the handling of such a case. This does not mean, however, that the State's Attorney was given unfettered control over complaints alleging the commission of every felony.

In the case of enumerated felonies, under § 3–810(b)(3)(i) the statute expressly eliminates the authority previously reserved to the intake officer to dispose of the case as he or she deems appropriate. With respect to nonenumerated felonies, however, the Legislature by the plain language of subsection (b)(3)(ii) preserved the initial duties of the intake officer. Subsection (b)(3)(ii) now authorizes the State to intercede into the matter without the necessity of an appeal by the complainant, but only *after* the intake officer has denied authorization to file a petition and has referred the matter along with the intake file to the State's Attorney. The 1982 changes clearly obviated an appeal to the State's

Attorney's Office as a condition precedent to the State's action. The new changes did not eliminate all preliminary participation by the intake officer before the State's authority to intercede becomes "ripe." As we will later explain, this preliminary participation is not merely *pro forma*, but is a crucial step in processing a juvenile case.

The State argues that since it would have filed delinquency and waiver petitions with or without J.S.A. authorization, there was no harm done. Were we to accept this argument, we would essentially eliminate a portion of the new provisions which allow for State's Attorney review only after there has been a denial of authorization and a forwarding of the case file. More important, we would effectively be eliminating the input of the intake officer. Both the rules of statutory construction and the purpose behind the intake process preclude us from adopting the State's argument.

### a. Statutory Construction

■ Where the language of a statute is clear, courts may not insert or omit words to make the statute express an intention not evidenced in its original form. *Bridges v. Nicely,* 304 Md. 1, 10–11, 497 A.2d 142 (1985). In the case of a nonenumerated felony, had the Legislature intended to permit the State immediately to preempt the case, it would have provided for the same procedure as it did for felonies enumerated in § 441(e)—that is, immediate bypass of the intake officer to the State's Attorney. We must confine ourselves "to a construction of the statute as written, and not attempt, under the guise of construction, to supply omissions or remedy possible defects in the statute...." *Amalgamated Casualty Ins. Co. v. Helms,* 239 Md. 529, 535–36, 212 A.2d 311 (1965).

The Legislature designed a scheme whereby all delinquency allegations, except enumerated felonies, would be promptly inquired into by an intake officer. The intake officer, in light of his or her training and in light of the revelations of the inquiry, would then proceed on a course of action. Only after the intake officer denies authorization

to file a petition does the State's Attorney then have any authority to intercede in the matter. In the case of nonenumerated felonies, this authority becomes viable after referral of the complaint by J.S.A. and receipt of the intake file by the State's Attorney. In the case of misdemeanors, this authority is not exercisable until after a party appeals the intake officer's decision to the State's Attorney.

### b. Purpose of J.S.A. Participation

It is more than the mere violation of the procedural steps set out in the plain language of § 3–810(b)(3)(ii) that is offensive to this Court. What is unacceptable is that the State's action in bypassing the intake officer is contrary to the best interests of the juvenile and the public. The State's argument that, in essence, no prejudice resulted to Patrick A. assumes that J.S.A.'s preliminary participation is merely a perfunctory exercise. This assumption is erroneous. In the case of subsection (b)(3)(ii) offenses, the intake process is at the same time beneficial to both the juvenile and the community at large. Let us explain.

Under subsection (b)(3)(ii), after the intake officer makes a preliminary investigation, if he or she determines that judicial action is not appropriate, the matter must still be referred to the State's Attorney. More than the mere referral, however, is the responsibility to forward a copy of the intake file. Included in this file must be "information as to any and all prior intake involvement with the child." It is this part of the amended procedures that renders the role of the intake officer more than merely perfunctory. And it is this aspect of the statutory scheme that guarantees that the State acts only after balancing the community's interest in punishing "non-violent" felony offenders with the juvenile's interest in receiving the most appropriate treatment given his or her particular circumstances.

The information forwarded by J.S.A. provides the State's Attorney with valuable data concerning the juvenile's background and intake history. Unlike the case of juveniles 16 years old or older who allegedly committed crimes of vio-

lence, for teenagers accused of committing lesser felonies, as in the case *sub judice,* the Legislature has concluded that the additional information about background and intake involvement is crucial for the State to review before making the determination that a petition is in order rather than a diversionary resolution. Under the present statutory scheme, the State's Attorney must consider this information prior to proceeding by petition or otherwise.

The receipt of this information benefits both the juvenile and the public. The juvenile is assured that all pertinent personal data is available to the State so that it may make an informed determination before going forward. This proper use of the intake report helps to preserve the more tender juvenile approach for the juvenile offender accused of committing a lesser felony, and reserves the prosecutorial approach for enumerated felony offenders. Moreover, as Justice White suggested in his concurring opinion in *McKeiver v. Pennsylvania,* 403 U.S. 528, 552, 91 S.Ct. 1976, 1989, 29 L.Ed.2d 647 (1971) (plurality opinion), as the jury is a "buffer to the corrupt or overzealous prosecutor" in the criminal law system, the "distinctive intake policies and procedures of the juvenile court system to a great extent" serve this same function.[6]

The intake information similarly benefits the public. It can ensure that repeat teenage offenders most likely will be subjected to judicial action, while the uninitiated offender will most likely be subjected to something less. It allows the State to choose wisely between "spanking" a bad child or instead "slapping on the wrist" a misguided child. In addition to this social benefit, the public benefits economically when the proper procedure is followed. If the State

---

**6.** As an example perhaps of overzealousness, the State's Attorney notified the juvenile authorities that in addition to Patrick A., it was going to file petitions and waivers against 23 other youths who along with Patrick A. were arrested in a school drug raid. Rather than assess each juvenile's individual background and circumstances, apparently the State's Attorney filed delinquency and waiver petitions against all these juveniles prior to referrals from J.S.A.

has received and reviewed the intake information prior to deciding what action to take, in some instances the adjudication expense could be eliminated. For example, in the case of Patrick A., had the State's Attorney noted that although previously adjudicated delinquent, Patrick A. was complying with the terms of probation and given the nature of the offense in question, the State might have concluded that a waiver hearing was inappropriate. The State also might have concluded a diversionary action was more appropriate.[7]

■ As we have explained, the action of the State was inappropriate. We recognize that dismissal is a harsh sanction, but the dismissal of a delinquency petition has been upheld when the disobedience is violative of the Legislature's intent and the sanction advances the legislative purpose. *See In Re: James S.*, 286 Md. 702, 713, 410 A.2d 586 (1980). Accordingly, since the State's Attorney proceeded without the benefit of J.S.A. involvement and since such action clearly violates the statutory scheme, we hold dismissal of the petitions was required.[8]

### III. WHO BENEFITS FROM SANCTION

Finally, the State argues that dismissal is not appropriate because the sanction does not "inure to the benefit of the juvenile," citing *In Re: Dewayne H.*, 290 Md. 401, 405, 430

---

**7.** Information not yet gathered for the State's Attorney when that Office filed the delinquency and waiver petitions, but that would have been helpful to its consideration in making a determination regarding Patrick A., included the following: (1) although Patrick A. was previously found delinquent in juvenile court on an assault and battery charge, he was reporting to his probation officer as directed, and had kept up his monthly installment payments toward restitution to the victim; (2) Patrick A. was presently employed and would be attending G.E.D. preparatory classes in the near future; (3) he was seeing a therapist regarding his difficulties in dealing with his parents' divorce and was no trouble at home; (4) Patrick A. provided a great deal of physical help to his disabled father; and (5) Patrick A. had future goals including military service and college.

**8.** We also note that the State did not suggest an alternative sanction to dismissal.

A.2d 76 (1981). Referring us to this quoted language, the State posits that Patrick A. would not benefit from dismissal because "[t]he lower court's decision in this case denies the juvenile an opportunity for further needed treatment." The State's argument is somewhat strained since it sought to deprive the juvenile of those very benefits by seeking a waiver of the juvenile court's jurisdiction.

Moreover, the State's argument puts the cart before the horse. In *In Re: Dewayne H.*, the Court reasoned that dismissal of a delinquency petition was inappropriate because Dewayne H. would not necessarily benefit from such a sanction. Dewayne H. had already been adjudicated delinquent and was awaiting disposition. Thus, his need for treatment and services had already been established. To deny him the opportunity for rehabilitation would clearly be detrimental to him.

In contrast, Patrick A. has not yet been adjudicated delinquent. Thus, there has not yet been any showing that he is necessarily in need of treatment and services.[9] Nevertheless, while a dismissal prevents Patrick A. from receiving treatment if it is in fact needed, this sanction preserves the statutory framework for the handling of juveniles charged with nonenumerated felonies.

In conclusion, while Patrick A. individually may be least served by our decision, other juveniles and the juvenile process will be best served by this result. In *In Re: Phillip P.,* 50 Md.App. 235, 238–39, 437 A.2d 892 (1981), Chief Judge Gilbert, in denying dismissal of a delinquency petition as a sanction for an untimely disposition hearing in

---

**9.** We do recognize, however, the possibility that had the matter been properly instituted and adjudicated, the juvenile may have been found delinquent and in need of treatment. This of course is particularly valid if a waiver of juvenile jurisdiction would have been denied, but it is plausible that even if Patrick A. had been tried as an adult and convicted, he may have received treatment as a part of his sentencing. We would hope that this contact with the juvenile court system has had a salutary effect on his behavior if he did commit the delinquent acts alleged.

a juvenile matter, stated that if dismissal at that post-adjudicatory stage were permitted "juveniles are taught that form prevails over substance to the extent that the laws may be violated, and the violator, even though adjudged delinquent, may avoid punishment. . . ." In this case, the State itself, if not in violation of the law, has at least ignored the law. Hence, sanction by dismissal was proper.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY BALTIMORE COUNTY.