540 A.2d 1202

**In re KEMMO N.**

**No. 1000, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

May 12, 1988.

Certiorari Granted Sept. 2, 1988.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Andrew L. Sonner, State's Atty. for Montgomery County and Alan Bennett, Asst. State's Atty. for Montgomery County, on the brief, Rockville, for appellant.

John Kopolow, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellee.

Argued before MOYLAN, BISHOP and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

Appellee is a minor who was under the age of 16 at the time of his allegedly delinquent act. Appellee was originally charged with "strong arm robbery," theft of less than $300, possession of PCP and possession of PCP with the intent to distribute it.

Two weeks after charges were made, the Juvenile Services Administration's (JSA) intake officer advised the arresting officer, through use of the form prescribed by Md.Cts. & Jud.Proc.Code Ann. § 3–810.1 (1974, 1984 Repl.Vol., 1987

Cum.Supp.), that he had decided not to authorize juvenile court action in appellee's case because:

"[1.] The juvenile was issued a reprimand and warned against future involvement in delinquent activities.

"[2.] The juvenile will receive informal supervision by this Intake Officer which will include counseling and possibly referral to a program or agency to further work with problems seen as important to the juvenile's future adjustment.

"[3.] The juvenile will participate in a delinquency division program while on informal supervision."

The letter advising the arresting officer [1] of JSA's decision also advised him of his right to appeal the intake officer's decision to the Montgomery County State's Attorney's Office and provided the arresting officer with the appeal form. [2]

The arresting officer appealed to the State's Attorney's Office. That office in turn contacted JSA, which forwarded to the State's Attorney's Office a copy of the police report filed in connection with the matter, and a Juvenile Report Cover Sheet indicating appellee's prior involvement with JSA.

The State's Attorney reviewed the police report and juvenile cover sheet and filed a delinquency petition against appellee. Following a hearing, the District Court of Maryland for Montgomery County, sitting as a juvenile court, concluded that the State's Attorney erred in reviewing only the police report and juvenile cover sheet prior to filing the

---

1. Presumably, the notice was also sent to the victim in accordance with Md.Cts. & Jud.Proc.Code Ann. § 3–810(g) (1974, 1984 Repl.Vol.). This does, not appear in the record.

2. The arresting officer was not a party. "Party" is defined by § 3–801(q) as:

"'Party' includes a child who is the subject of a petition, the child's parent, guardian, or custodian, the petitioner and an adult who is charged under § 3–831 of this subtitle."

It should be noted that neither the victim nor the arresting officer is included in the definition.

petition against appellee. The district court also ruled that there was no right of appeal from JSA's determination to proceed informally in this matter. The court further held that the sanction for such errors was dismissal and dismissed the delinquency petition.

We hold that there is no appeal from a juvenile services intake officer's decision to proceed by way of an informal adjustment when all parties to the proceeding consent to that procedure. Thus, we decline to address the sufficiency of the State's Attorney's review of appellee's case before filing the petition against him.[3]

Appellant argues that, based on the form prescribed by § 3–810.1, the Legislature could not have intended to eliminate the right to appeal from a JSA decision to proceed informally. Specifically, appellant contends that inclusion of an "informal adjustment" as a reason for denying authorization to file a petition is inconsistent with the proposition that informal adjustments are not appealable. Appellant concludes that the intake officer's decision to proceed with an informal adjustment, as a matter of law, amounted to a denial of authority to file a petition so that an appeal was permitted. We disagree.

In *Kaczorowski v. City of Baltimore*, 309 Md. 505, 525 A.2d 628 (1987), the Court said that in enacting legislation

"it is fair to say that legislation usually has some objective, goal, or purpose. It seeks to remedy some evil, to advance some interest, to attain some end. If we characterize the search for legislative intent as an effort to 'seek to discern some general purpose, aim, or policy reflected in the statute,' we state the concept more accurately and avoid the fiction.... 'We also recognize the rule that where a statute is plainly susceptible of more

---

**3.** Appellant contends that the court's finding that there is no right of appeal from an informal adjustment was dicta. We do not agree. In an oral decision, the court stated that its "reasons" for dismissing the case were the failure of the State's Attorney to consider the required information *and* its reading of the statute to preclude an appeal from an informal adjustment.

than one meaning and thus contains an ambiguity, courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment. In such circumstances, the court, in seeking to ascertain legislative intent, may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense.'
... When we pursue the context of statutory language, we are not limited to the words of the statute as they are printed in the Annotated Code. We may and often must consider other 'external manifestations' or 'persuasive evidence,' including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case."

*Kaczorowski*, 309 Md. at 513–15, 525 A.2d 628 (citations omitted). Thus, in interpreting statutory language, we look at the plain language, the legislative purpose and "external manifestations" such as its relationship to subsequent legislation.

## Plain Language

In cases involving allegations that a child less than 16 years old committed a delinquent act, the JSA intake officer does far more than simply receive and file complaints. Under § 3–810(b)(1), he or she must make a preliminary inquiry to determine whether the juvenile court has jurisdiction and whether judicial action is in the best interests of the public or the child. Ultimately, he or she must choose among four courses of action: "(i) authorize the filing of a petition, (ii) conduct a further investigation into the allegations of the complaint, (iii) propose an informal adjustment of the matter, or (iv) refuse authorization to file a petition."

Md.Cts. & Jud.Proc.Code Ann. § 3–810(b)(1) (1974, 1984 Repl.Vol.).[4]

If the intake officer decides to file a petition, he or she must notify the parties of the reasons for the decision. § 3–810(c)(2). If practicable, he or she must provide the victim, arresting officer and petitioner with the same information. § 3–810(c)(3). If the intake officer concludes that a further investigation is warranted, he or she has 10 days to complete such investigation and render a decision. § 3–810(d).

Section 3–810 reads in pertinent part:

"(e) The intake officer may *propose an informal adjustment* of the matter if based on the complaint, his preliminary inquiry, and such further investigation as he may make, he concludes that the court has jurisdiction but that an informal adjustment, rather than judicial action, is in the best interests of the public and the child. If the intake officer proposes an informal adjustment, he shall inform the parties of the nature of the complaint, the objectives of the adjustment process, the conditions and procedures under which it will be conducted, and the fact that it is not obligatory. *The intake officer shall not proceed with an informal adjustment unless all parties to the proceeding consent to that procedure.*

"(f) During the informal adjustment process, the child shall be subject to such supervision as the intake officer deems appropriate; however, no party is compelled to appear at any conference, produce any paper, or visit any place. The informal adjustment process shall not exceed 90 days unless that time is extended by the court. *If all of the parties do not consent to an informal adjustment, or such adjustment cannot, in the judgment of the intake officer, be completed successfully, he shall*

---

4. The form at issue, which informs of the right to appeal, is only required when the intake officer refuses authorization to file a petition. Md.Cts. & Jud.Proc.Code Ann. § 3–810(g) (1974, 1984 Repl. Vol.).

*authorize the filing of a petition or deny authorization to file a petition pursuant to subsection (g).*

"(g) If based upon the complaint, his preliminary inquiry, and such further investigation as he may make, the intake officer concludes that the court has no jurisdiction, or that neither an informal adjustment nor judicial action is appropriate, *he may deny authorization to file a petition.* He shall, in that event, inform the following persons, through use of the form prescribed by § 3–810.1 of this article, of his decision, the reasons for it, and their right of review provided in this section:

(1) The victim;

(2) The arresting police officer; and

(3) The person or agency that filed the complaint or caused it to be filed.

"(h)(1) If the complaint alleges the commission of a delinquent act and the intake officer denies authorization to file a petition, the following persons, may appeal the denial to the State's Attorney:

(i) The victim;

(ii) The arresting police officer; and

(iii) The person or agency that filed the complaint or caused it to be filed. In order for an appeal to be made, it must be received by the State's Attorney's office within 30 days after the form prescribed by § 3–810.1 is mailed by the juvenile intake officer to the person being informed of the intake officer's decision.

"(2) The State's Attorney shall review the denial. If he concludes that the court has jurisdiction and that judicial action is in the best interests of the public or the child, he may file a petition. This petition shall be filed within 30 days of the receipt of the complainant's appeal." (Emphasis added.)

For our purposes, a careful reading of subsections (e), (f) and (g) is crucial to understanding under what circumstances the form providing for the right to appeal is to be sent. Under subsection (e) and (f), the intake officer may proceed

with an informal adjustment provided that all of the parties to the proceeding consent. It is only when the parties do not consent to an informal adjustment or the intake officer concludes that such adjustment cannot be completed successfully that he or she "shall authorize the filing of a petition *or deny authorization* to file a petition pursuant to subsection (g)."[5] § 3–810(f) (emphasis added). In other words, if the parties consent to an informal adjustment, the intake officer is not in a position to deny authorization to file a petition and the form at issue is not sent.

Finally, under subsection (g), the form is sent when the intake officer denies authorization to file if he or she *does not* feel that an informal adjustment is appropriate.[6] Thus, the form is only required to be transmitted if the parties do not consent to an informal adjustment *and* the intake officer denies authorization to file *or* the intake officer does not feel that an informal adjustment is appropriate *and* he or she denies authorization to file a petition.

The plain language of the statute does not support appellant's position that the intake officer's decision to proceed with an informal adjustment amounts to a denial of authorization to file a petition, thereby permitting an appeal.

"If the intake officer decided ... that an informal adjustment was appropriate, the matter could be resolved if all parties to the proceeding consented to the conditions and procedures set out for the adjustment process. In that case, the State's Attorney was essentially precluded from filing a petition. If the intake officer instead denied authorization to file a petition, the State's Attorney could review that decision only if the individual or agency who

---

**5.** Subsection (g) requires the intake officer, who denies authorization to file a petition, to send the form informing those specified of the right to appeal.

**6.** Subsection (g) also requires the form to be sent if the intake officer denies authorization to file a petition because the court has no jurisdiction or he or she feels judicial action is not appropriate. Those two factors are not relevant to the case *sub judice.*

originally complained to J.S.A. appealed to the State's Attorney."

*In re Patrick A.,* 70 Md.App. 191, 195–96, 520 A.2d 743 (1987). In other words, for purposes of triggering a right of appeal, disposition by informal adjustment is not the equivalent of denying authorization to file a petition.

In the case *sub judice,* the intake officer proposed an informal adjustment. There is no indication that any party withheld consent. Thus, the intake officer did not need to and should not have sent the form prescribed by § 3–810.1 to the arresting officer because it erroneously indicated that he was denying authorization to file a petition.

### Legislative Purpose

In *In re Keith W.,* 310 Md. 99, 527 A.2d 35 (1987), the Court of Appeals said:

"As we see it, the overriding goal of Maryland's juvenile statutory scheme is to rehabilitate and treat delinquent juveniles so that they become useful and productive members of society. As stated in part, the juvenile subtitle's purpose is '[t]o provide for the care, protection, and wholesome mental and physical development of children coming within [the subtitle's provisions]; and to provide for a program of treatment, training, and rehabilitation consistent with the child's best interests and the protection of the public interest.' Maryland Code (1974, 1984 Repl.Vol.), § 3–802(a)(1), Courts and Judicial Proceedings Article....

"To further these stated purposes, the General Assembly has enacted statutes carefully crafted to address the specific needs of adolescents and children.... The General Assembly has further provided that, in making a disposition of a juvenile cause after the juvenile has been adjudicated a delinquent, '[t]he priorities ... are [ensuring] the public safety and [providing] a program of treatment, training, and rehabilitation best suited to the physical, mental, and moral welfare of the child consistent with the public interest.' § 3–820(b)."

*In re Keith W.,* 310 Md. at 106, 527 A.2d 35 (brackets in original).

> "[T]he foremost consideration in the disposition of a juvenile proceeding should be a course of treatment and rehabilitation best suited to promote the full growth and development of the child."

*In re Keith W.,* 310 Md. at 109, 527 A.2d 35.

In *Matter of Davis,* 17 Md.App. 98, 104, 299 A.2d 856 (1973), we recognized that "the raison d'etre of the Juvenile Causes Act is that a child does not commit a crime when he commits a delinquent act and therefore is not a criminal. He is not to be punished but afforded the supervision and treatment to be made aware of what is right and what is wrong so as to be amenable to the criminal laws."

To effectuate those ideals, the Legislature designed a statutory scheme which relies on the respective skills and training of the intake officer and State's Attorney and at the same time balances the best interests of the child and societal concerns.

Section 3–810 is clear in its directive that, unless a party to the proceeding objects, the intake officer may proceed with an informal adjustment. The intake officer acts as a screen, blocking appropriate cases from prosecutorial action. The statute grants him or her substantial discretion in the performance of this function. *In re Laurence T.,* 285 Md. 621, 625–26, 403 A.2d 1256 (1979). The statute is also very clear in the division of authority between the intake officer and the State's Attorney. In the case of children under 16 years of age, it is only when the intake officer *denies* authorization to file a petition and an appeal is noted that the State's Attorney's authority is triggered. Appellant's interpretation would undermine the substantial statutory authority the Legislature has chosen to delegate to the intake officer. It would effectively emasculate the intake officer's power to determine the best interests of the child.

The informal adjustment is an important mechanism in keeping the offenders from having a juvenile record. It

precludes the filing of a delinquency petition and enables the juvenile to avoid the trauma of full involvement in the court system.

Consistent with the goal to protect the public interest and address societal concerns, the Legislature amended § 3–810 in 1980. First, the number of people given the right to appeal the intake officer's decision was increased. Second, the intake officer was now required to send those persons the form prescribed by § 3–810.1 which lists a number of possible reasons why authority to file a petition was denied. The purpose was to give those people most affected by juvenile misconduct more information and more input in the process. Undeniably, the form which includes an informal adjustment as a reason for denying authority to file a petition and the statute which precludes an appeal from an informal adjustment are inconsistent. Under *Kaczorowski*, when the language of a statute is ambiguous and thus subjects it to more than one meaning, we also look beyond the plain meaning of the words for the legislative purpose and objectives in enacting the statute. The purpose of requiring use of the form when authorization to file a petition is denied is to guarantee that those persons with the right to appeal understand the reasons behind the intake officer's decision. There is no indication that the Legislature intended the form to alter the preexisting division of authority relegated to the intake officer and State's Attorney's office contained in the body of the statute. We decline to say that an inconsistency appearing in a form letter justifies extinguishing the basic statutory scheme implemented by the Legislature.

## Subsequent Legislation

As originally enacted, § 3–810(g) did not require the intake officer to send the form prescribed by § 3–810.1.[7] The intake officer was simply required to inform the com-

---

7.  1975 Md.Laws ch. 554.

plainant,[8] in writing, of his or her decision to deny authori-
zation to file a petition. The letter was to state the reasons
for the decision and inform the complainant of his or her
right to appeal. In 1980, § 3–810(g) was amended in two
ways. Substantively, the Legislature expanded the number
of persons entitled to appeal the intake officer's decision to
deny authorization to file a petition.[9] In addition, upon .
denying authorization to file, the intake officer was now
required to send those persons the form prescribed by
§ 3–810.1. 1980 Md.Laws ch. 685. This form contains a
list of possible reasons for the intake officer's decision.

What is significant about these changes is that the Legis-
lature did not simply amend that section by requiring the
use of a form. The Legislature also made substantive
changes within the text by increasing the number of per-
sons who could appeal. If at that time the Legislature had
also wanted to make the intake officer's decision to proceed
with an informal adjustment tantamount to a denial of
authorization to file a petition, it could have done so. But it
did not. Instead, that part of subsection (g) remained
intact, permitting the intake officer to deny authorization to
file a petition at his or her discretion. We cannot do what
the Legislature had declined to do.

In 1982, once again the Legislature amended § 3–810.
Prior to these amendments, the authority of the State's
Attorney to file a delinquency petition was, to a large
extent, subordinate to that of the intake officer. The
State's Attorney could file a delinquency petition only if the

---

**8.** "Complainant" was defined by Md.Cts. & Jud.Proc.Code Ann.
§ 3–801(h) (1974, 1980 Repl.Vol.), as:
   "'Complainant' means any person or agency that files or causes to
   be filed a complaint with an intake officer."
That definition was subsequently deleted when the statute was amend-
ed in 1980. 1980 Md.Laws ch. 552.

**9.** Originally, the only person who could appeal the decision was the
complainant. As amended, subsection (g) also authorized the victim
and the arresting officer to appeal the denial of authorization to file a
petition. 1980 Md.Laws ch. 552.

intake officer recommended it, the parties did not consent to an informal adjustment or if someone entitled to appeal the intake officer's decision did in fact appeal. Otherwise, the State's Attorney was essentially precluded from filing a petition. *In re Patrick A.,* 70 Md.App. 191, 195–96, 520 A.2d 743 (1987). In 1982, faced with escalating juvenile crime, the Legislature amended this procedure to augment the authority of the State's Attorney's office when a juvenile 16 years of age or older was accused of committing a felony. 1982 Md.Laws ch. 469.[10] Before 1982, the JSA could in effect "close out" a juvenile case by way of successful completion of the informal adjustment process. The 1982 changes permitted the State's Attorney to proceed in some cases regardless of the action of Juvenile Services when the child was over 16 years old. The amendments

---

**10.** Section 3–810(b) was redesignated (b)(1) and remained largely intact:

"(b)(1) Except as otherwise provided in this subsection, in considering the complaint, the intake officer shall make a preliminary inquiry within 15 days as to whether the court has jurisdiction and whether judicial action is in the best interests of the public or the child. He may, after such inquiry and in accordance with this section, (i) authorize the filing of a petition, (ii) conduct a further investigation into the allegations of the complaint, (iii) propose an informal adjustment of the matter, or (iv) refuse authorization to file a petition."

1982 Md.Laws ch. 469. The revision made subsection (b)(1) subject to contrary provisions which were added to § 3–810(b), specifically subsections (b)(3)(i) and (ii). Those subsections are as follows:

"(3)(i) If a complaint is filed that alleges the commission of a delinquent act by a child who is 16 years old or older, which would be a felony enumerated in Article 27, § 441(e) of the Code if committed by an adult, the intake officer shall immediately forward the complaint to the State's Attorney.

"(ii) If a complaint is filed that alleges the commission of a delinquent act by a child who is 16 years old or older, which would be a felony other than one enumerated in Article 27, § 441(e) of the Code if committed by an adult, and if the intake officer has denied authorization to file a petition, the intake officer shall immediately:

"1. Forward the complaint to the State's Attorney; and

"2. Forward a copy of the entire intake case file to the State's Attorney with information as to any and all prior intake involvement with the child."

1982 Md.Laws ch. 469.

also allowed the State's Attorney to act at an earlier stage in cases involving children over 16 years old where a more serious felony was committed. *In re Patrick A.,* 70 Md. App. at 198, 520 A.2d 743.

If the Legislature had wanted to usurp the authority of the Juvenile Services intake officer, it could have. Instead, the Legislature limited the increased authority of the State's Attorney's office to cases involving children over 16 years old. The amendments still enabled the intake officer to "close out" a juvenile case through the use of the informal adjustment in cases involving children *under* 16 years of age. Thus, the Legislature specifically felt it was only necessary to enhance the State's Attorney's power under certain circumstances. It unquestionably had the ability and opportunity to completely restructure the division of authority which existed between the intake officer and the State's Attorney's office. Once again, we cannot do what the Legislature has chosen not to do. For the reasons stated above, we affirm the trial court's decision to dismiss the case *sub judice.*

JUDGMENT AFFIRMED. COSTS TO BE PAID BY MONTGOMERY COUNTY.