602 A.2d 250

**In re LAWRENCE D.**

**No. 692, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

March 3, 1992.

---

628

Cathleen C. Brockmeyer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty. for Montgomery County, Rockville, on the brief), for appellant.

Victoria S. Lansburgh, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellee.

Argued before BLOOM, WENNER and HARRELL, JJ.

HARRELL, Judge.

On 3 December 1990, delinquency petitions were filed against appellee, Lawrence D., a juvenile. On 2 May 1991, the District Court for Montgomery County, Juvenile Division, granted appellee's oral motion to dismiss the petitions. This appeal followed.

## Issues

Appellant raises the following issues for our review:
I. Whether the intake procedure conducted in this case complied with Md.Cts. & Jud.Proc.Code Ann. § 3–810; and,
II. Whether, assuming the intake procedure was not followed, the dismissal of the petitions was the appropriate sanction.

## Facts

On 26 October 1990, the Department of Juvenile Services (DJS) received a complaint against Lawrence D. charging him with acts that would have constituted assault and battery if committed by an adult. Three days later, an intake officer at DJS sent what is arguably a form letter to Lawrence D.'s mother which stated, *inter alia:*

This office has recently received the above referenced complaint in which your child has been named as the RESPONDENT. It is a function of this office to review such complaints and to decide whether formal prosecution by the State's Attorney should be authorized.

To assist us in making this decision we have scheduled an appointment to meet with you and your child to discuss this matter. The appointment has been scheduled for:

**DATE:** November 9th, Friday    **TIME:** 9 AM

Although the Record is unclear, the State argues that the intake officer held a meeting with Lawrence D. and his family on 9 November 1990. On 16 November 1990, the DJS intake officer wrote an "Intake Screening" Report which stated:

On November 16, 1990, Lawrence and his parents failed to show for the scheduled intake Screening Conference. This appointment had been reset from an earlier date at the father's request.

The current offense alleges Lawrence assaulted and battered three juveniles on June 1, 1990, which was a couple of weeks before he turned 18 years old.

The writer spoke to Sheila Driver, mother of Terrace [sic] Driver. Terrance had 26 stitches in his mouth and is continuing under a doctor's care. He will need plastic surgery in the future. Victim Christopher Burke had his leg broken.

This is an assault where Lawrence and several adult codefendants went to a graduation party and picked fights with the victims.

All the victim's parents want the case prosecuted. Two of the adult codefendants have already been found guilty of offenses related to this case.

Lawrence has the following prior record:

09/18/87: Larceny—Informally Adjusted

10/28/89: Aggravated Assault (knife)—Closed. State did not petition on review.

11/22/89: Possession of Pager at School–Closed, referred to PACT.

04/03/90: Assault and Battery (4); Trespassing—Informally Adjusted. Completed PACT assessment. Family referred to counselling. Did not follow through.

Based on the extreme seriousness of the current offense, it appears necessary that the current case be referred to the State's Attorney's Office with authorization to petition in order to protect the community.

DECISION: Forward to State's Attorney's Office with authorization to petition.

RATIONALE: *Best interest of community and respondent.*

On the same day, the intake officer referred the matter to the State's Attorney's Office for formal petitioning. Formal delinquency petitions were filed against Lawrence D. on 3 December 1990.

On 2 May 1991 an adjudicatory hearing was held in the District Court for Montgomery County, Juvenile Division (Moore, Jr., J.). Counsel for Lawrence D. moved to dismiss the charges against the juvenile on the grounds that the DJS intake referral to the State's Attorney, which occurred twenty-one days after DJS received the complaint, violated the Juvenile Causes Act, Md.Cts. & Jud.Proc.Code Ann. § 3–810 (1989 Repl.Vol.)[1] which provides, in pertinent part:

(a) The intake officer shall receive:

(1) Complaints from a person or agency having knowledge of facts which may cause a person to be subject to the jurisdiction of the court; and

(2) Citations issued by a police officer under § 3–835 of this article.

(b)(1) Except as otherwise provided in this subsection, in considering the complaint, the intake officer shall make a preliminary inquiry within 15 days as to whether the court has jurisdiction and whether judicial action is in the best interests of the public or the child. The intake officer may, after such inquiry and in accordance with this section:

(i) Authorize the filing of a petition;

(ii) Conduct a further investigation into the allegations of the complaint;

---

**1.** On 1 July 1991, an amendment of this statute went into effect. New subsection (b) was added and former subsections (b) and (d) were redesignated as subsections (c) and (e) respectively. *See* Md.Cts. & Jud.Proc.Code Ann. § 3–810 (1989 & 1991 Supp.). In this opinion we will refer to the former subsections.

(iii) Propose an informal adjustment of the matter; or

(iv) Refuse authorization to file a petition.

\* \* \* \* \* \*

(d)(1) The intake office may conduct a further investigation if based upon the complaint and the preliminary inquiry, the intake officer concludes that further inquiry is necessary in order to determine whether the court has jurisdiction or whether judicial action is in the best interests of the public or the child.

(2) The further investigation shall be completed and a decision made by the intake officer within 10 days, unless that time is extended by the court.

Counsel for Lawrence D. argued that DJS erroneously invoked the ten day period under subsection (d) prior to completing its preliminary inquiry. The juvenile court agreed and dismissed the petitions, stating:

COURT: ....

So in any event the question is whether the Intake Office having received the—complaint on the twenty-sixth, having done and [sic] Intake screening on the sixteenth, which is clearly—anyway you count it—is past fifteen days, whether that does in fact run afoul of the fifteen days or whether their action in setting up the—conference with the family, the respondent and his family or his parent, by letter of the twenty-ninth, setting up a meeting for the ninth, is in fact a preliminary inquiry, which—was presumably then conducted on the—on or about the ninth. And the decision made on the sixteenth, whether we are then into the time period beyond.

I'm going to have to rule in favor of the respondent here, Ms. Black and Mr. Bennett.

\* \* \* \* \* \*

Just the Court feels that it—that the fifteen days was not complied with. But I feel that there has not been action taken in accordance with the statute, which is mandatory within fifteen days.

\* \* \* \* \* \*

Fifteen days the—Court is ruling obviously that the twenty-sixth, having received the complaint and not having made the—the—necessary preliminary decision by fifteen days therefrom that this sixteenth of November is well beyond the fifteen days.

## *Discussion*
### I.

The State contends that the intake procedures conducted in this case complied with Md.Cts. & Jud.Proc.Code Ann. § 3–810. We agree and explain.

The primary purpose of the preliminary inquiry mandated in the Juvenile Causes Act is to determine which course of action would be in the best interest of both the public and the child. Md.Cts. & Jud.Proc.Code Ann. § 3–810(b)(1). In *In re Patrick A.*, 70 Md.App. 191, 520 A.2d 743 (1987), *aff'd*, 312 Md. 482, 540 A.2d 810 (1988), we discussed the statutory scheme established by the legislature in the Juvenile Causes Act. Although that case involved the question of whether a State's Attorney may file a delinquency petition before the matter is processed by an intake officer, it sheds some light on the purpose of the intake process in general. We said:

> The Legislature designed a scheme whereby all delinquency allegations, except enumerated felonies, would be promptly inquired into by an intake officer. The intake officer, in light of his or her training and in light of the revelations of the inquiry, would then proceed on a course of action.
>
> . . . .
>
> [T]he Legislature has concluded that the additional information about background and intake involvement is crucial for the State to review before making the determination that a petition is in order rather than a diversionary resolution. . . .
>
> The receipt of this information benefits both the juvenile and the public. The juvenile is assured that all

pertinent personal data is available to the State so that it may make an informed determination before going forward. This proper use of the intake report helps to preserve the more tender juvenile approach for the juvenile offender accused of committing a lesser felony, and reserves the prosecutorial approach for enumerated felony offenders. Moreover, as Justice White suggested in his concurring opinion in *McKeiver v. Pennsylavania,* 403 U.S. 528, 552, 91 S.Ct. 1976, 1989, 29 L.Ed.2d 647 (1971) (plurality opinion), as the jury is a 'buffer to the corrupt or overzealous prosecutor' in the criminal law system, the 'distinctive intake policies and procedures of the juvenile court system to a great extent' serve this same function.

70 Md.App. at 201, 203, 520 A.2d 743.

In *In re Steven B.,* 84 Md.App. 1, 578 A.2d 223 (1990), we also discussed the role of intake officers. In that case we said:

We think it crystal clear that in enacting Courts Art. § 3–810(b)(3)(i) the Legislature made manifest that it placed value on the input of the intake officer in determining whether a petition should be filed or instead that there be an 'informal adjustment.' DJS may not adopt a policy which ignores, limits, or restricts the intake officer's role in the juvenile cause process. *The intake officer should conduct a more detailed review of the case,* rather then [sic] merely classifying the offense allegedly committed by the juvenile as falling within the ambit of § 3–810(b)(3)(i) and automatically authorizing the filing of a petition charging delinquency. *The role of the intake officer is to review fully the case so as to determine whether it would be more appropriately handled through informal adjustment or even to recommend that no further action be taken.* The State's Attorney should consider the intake officer's recommendations in determining the appropriateness of filing a petition in that particular juvenile case.

We make clear that the Secretary of DJS is not free to ignore the purposes of the Juvenile Causes statute and adopt policies that are contrary to the legislative will even if those policies are considered by DJS to be more expedient.

*In re Steven B.*, 84 Md.App. at 8–9, 578 A.2d 223 (emphasis added).

Most recently, in *In re Kevin Eugene C.*, 90 Md.App. 85, 599 A.2d 1233 (1992), we addressed the issue of whether an intake interview with the juvenile is a required part of the preliminary inquiry under the Juvenile Causes Act. In that case, the State argued that because the juvenile intended to plead "not involved," it was unnecessary to conduct an intake interview. We disagreed. After reviewing *In re Patrick A.* and *In re Steven B.*, we found:

... [I]t is manifest that the function of the intake officer is pivotal to the execution of the legislative will. As stated by this Court and the Court of Appeals, it is incumbent upon the intake officer to review *all* of the evidence reasonably available to him or her before making a recommendation to the State's Attorney. In doing so, the officer not only adheres to the directives of this Court and the Court of Appeals, but the officer also fulfills the purpose of the statute (*i.e.*, to determine whether judicial action is in the best interest of the public or the child).

We therefore hold that ordinarily an intake interview is an essential part of the preliminary review unless the juvenile refuses to participate or is unable to participate. Absent such an interview, the intake officer may not have effectively made a preliminary inquiry required by § 3–810(c).

*In re Kevin Eugene C.*, at 92–93, 599 A.2d 1233.

In the case before us, it is clear that the intake officer sent a letter to the juvenile's mother three days after DJS received the complaint. A meeting was called for in the letter for 9 November 1990, the fourteenth day after the complaint was received. It is unclear from the Record

whether the juvenile or either of his parents attended a meeting with the intake officer on that date. There is no evidence to suggest, however, that the juvenile refused to participate in this meeting.

As was noted in the "Intake Screening" Report of 16 November prepared by the intake officer, the Record suggests that no meeting occurred on 9 November due to the juvenile's father's request that it be "reset." The "reset" meeting, or "Intake Screening Conference" as denominated by the intake officer in his Report, was scheduled for 16 November. Neither the juvenile nor his parents appeared for the "reset" conference. This being the first evidence that the juvenile and his parents were refusing to participate in the intake process, the intake officer immediately completed his preliminary inquiry and made his recommendation for disposition.

■ Under our holding in *In re Kevin Eugene C.*, if in fact, the juvenile and his parents (or either parent) were unable to attend the meeting on 9 November, the intake officer acted properly in rescheduling the meeting for 16 November 1990 and proceeding under § 3–810(b)(1)(i), even though that date was beyond the initial 15–day period. It is ordinarily incumbent upon the intake officer to conduct an intake interview of the juvenile, unless the juvenile refuses to participate or is unable to participate. The intake officer is also obligated to review all of the evidence before making a recommendation in order to fulfill the purpose of the Juvenile Causes Act (*i.e.*, to determine whether judicial action is in the best interest of the public or the child). When the intake officer cannot conduct the preliminary inquiry within the initial fifteen day period because the juvenile or his parents requests a different meeting date or is otherwise unable to attend a previously scheduled meeting, subsection (d) provides a mechanism for allowing the intake officer to expand the time limit within which he may conduct the intake interview with the juvenile. This is the only possible reading of the statute that gives harmony to

the purpose of the statute and subsections (b)(1) and (d) under the facts of this case.

▪ If, on the other hand, one assumes that the juvenile (with or without one or both of his parents) attended a meeting on 9 November 1990, but one or both of the juvenile's parents requested another meeting or a postponement, the intake officer acted properly in scheduling the meeting for 16 November and conducting a further investigation under § 3–810(d)(1). Again, it is incumbent upon the intake officer to review all of the evidence in determining whether judicial action is in the best interest of the public or the child. When one or both of the parents of the juvenile are unable to attend a meeting with the intake officer within the initial 15–day period, and request the opportunity to meet, the officer may conduct a further investigation under subsection (d)(1).

▪ As noted previously, the juvenile and his parents failed to appear for the scheduled Intake Screening Conference on 16 November 1990. This failure to appear indicates a lack of willingness to participate on the part of the juvenile and his parents. Under such circumstances, we hold that the intake officer acted properly in concluding his investigation and issuing a decision under subsection (d)(2).

Our holding in *In re Kevin Eugene C.* indicates that ordinarily an intake interview of the juvenile is an essential step unless the juvenile refuses to participate or is unable to participate. By rescheduling a meeting with the juvenile within the additional 10–day period permitted under subsections (d)(1) and (2), the intake officer in the case *sub judice* attempted to fulfill the purpose of the Juvenile Causes Act. Once it became clear that the juvenile and his parents were unwilling to participate in the intake process, the intake officer had no alternative but to conclude his investigation.

Since the intake officer proceeded properly under subsections (d)(1) and (2) and concluded his investigation and made a decision on the twenty-first day after DJS received the complaint, we find that the requirements of the Juvenile Causes Act were met.

## II.

In the case *sub judice*, we have concluded that an effective preliminary investigation was made without an intake interview of the juvenile. Consequently, there was no reason to dismiss the delinquency petitions.[2] Under the circumstances of this case, we hold that the trial court erred in dismissing the appellee's delinquency petitions.

JUDGMENT OF THE DISTRICT COURT FOR MONTGOMERY COUNTY, JUVENILE DIVISION, REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY MONTGOMERY COUNTY, MARYLAND.

---

**2.** Although we need not address the propriety of the dismissal sanction in cases where the intake procedure is not followed, we note that the special purpose behind the Juvenile Causes Act is the rehabilitation and treatment of delinquent children. The Court of Appeals stated in *In re Keith W.*, 310 Md. 99, 104, 109, 527 A.2d 35 (1987), that "the purpose of Maryland's juvenile statute is not ordinarily best served by dismissal of the proceedings", and that "[o]nly the most extraordinary and egregious circumstances should be allowed to dictate dismissal as the sanction for.... violation of a procedural rule." *Id.* at 106, 109, 527 A.2d 35. *See also, In re Keith G.*, 325 Md. 538, 601 A.2d 1107 (1992); *In re William John S.*, 325 Md. 549, 601 A.2d 1112 (1992).