553 A.2d 1273

**In re KEMMO N.**

**No. 64, Sept. Term, 1988.**

Court of Appeals of Maryland.

March 2, 1989.

---

McAuliffe, J., filed concurring opinion in which Blackwell, J., joined.

Judson P. Garrett, Jr., Deputy Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Cathleen C. Brockmeyer, Asst. Atty. Gen., all on brief), Baltimore, for petitioner.

John L. Kopolow, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, for respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, BLACKWELL and CHARLES E. ORTH, Jr. (retired, Specially Assigned), JJ.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

I

██ For over two hundred years in Maryland, statutory construction has been an integral part of the appellate function. As early as 1755, in *Hammond v. Denton*, 1 H. & McH. 135, the "Court of Appeals of Maryland" was concerned with the intent of a legislative enactment. Since 1965 some thousand Maryland appellate opinions have quested legislative intent. The reason for the plethora of opinions is that the laws enacted by the legislature are at times ethereal, and the appellate court is called upon to construe or interpret them.

> Over the years standardized rules used by courts in statutory interpretation have evolved, basically from court explanations as to how they have arrived at the meaning of a statute brought before them in litigation. These precepts have come to be referred to as the cardinal rules or canons of statutory construction.

Ghost Hunting: Finding Legislative Intent in Maryland (1984) p. 1, by Michael S. Miller, Director, Maryland State Law Library. "To a considerable extent [the canons] are founded on both logic and common sense." *Kaczorowski v. City of Baltimore*, 309 Md. 505, 512, 525 A.2d 628 (1987). And although, as we observed in *Kaczorowski*, they may "afford an opportunity for principled decision making, as opposed to ad hoc judicial legislation," *id.*, "we do not engage in mindless application of canons of statutory construction." *NCR Corp. v. Comptroller*, 313 Md. 118, 145, 544 A.2d 764 (1988). Instead,

> [w]e look at statutory language in context; we consider legislative history when it is available. . . . Our endeavor always is to construe statutes so as to implement the legislative goal, not to frustrate it.

*Id.* at 145–146, 544 A.2d 764 (citations omitted). In short, when a court is engaged in the divination of legislative "intent," the key is the purpose of the legislation, determined in light of the statute's language and context. *Kaczorowski*, 309 Md. at 516, 525 A.2d 628. *See Wynn v. State*, 313 Md. 533, 539, 546 A.2d 465 (1988); *State v. In re Patrick A.*, 312 Md. 482, 540 A.2d 810 (1988).

## II

On 24 January 1987, Kemmo N., born 31 December 1971, was charged with "strong arm robbery," misdemeanor theft, possession of a controlled dangerous substance (PCP), and possession of the substance with intent to distribute. The intake officer of the Juvenile Services Agency (JSA) received a complaint from the arresting officer. In due course the intake officer notified the arresting officer that the case would proceed by way of informal adjustment. The intake officer said that upon a review of the facts he had "decided not to authorize Juvenile Court action." The notice set out the factors considered in the decision and explained the reasons for it. The notice included this statement:

> If you disagree with this decision and desire to appeal, you must complete the attached form and mail it to the State's Attorney's Office so that it is received by 4/6/87.

The arresting officer did indeed disagree with the decision. He completed the form for appeal and mailed it within the designated time to the State's Attorney. The State's Attorney reviewed the police report and a "Juvenile Report Cover Sheet" showing Kemmo's prior involvement with JSA. He filed a petition in the District Court of Maryland sitting as a juvenile court in Montgomery County charging Kemmo with commission of delinquent acts. JSA closed the case "at intake, pending prosecution by the State's Attorney's Office."

Prior to adjudication of the petition, Kemmo requested the District Court to dismiss the petition. He alleged that the State's Attorney's action was improper because it was

based solely on a review of the police report and the Juvenile Report Cover Sheet and that, in any event, there was no appeal from the intake officer's decision to proceed by way of informal adjustment. The District Court agreed and dismissed the petition. The State noted an appeal. The Court of Special Appeals affirmed the judgment of the District Court. *In Re Kemmo N.*, 75 Md.App. 269, 540 A.2d 1202 (1988). We granted the State's petition for a writ of certiorari. The sole question presented is:

Did the Court of Special Appeals erroneously conclude that there is no right of appeal from a decision by the Juvenile Services Agency to proceed informally on a complaint against a juvenile?

## III

The question calls upon us to interpret Maryland Code (1957, 1984 Repl.Vol., 1988 Cum.Supp.) § 3–810 of the Courts and Judicial Proceedings Article (CJ). The section concerns complaints which may cause a person to be subject to the jurisdiction of a court[1] in the exercise of its duties with respect to juvenile causes. Specifically, we are requested to construe the right of appeal from a decision of an intake officer[2] of the Juvenile Services Agency to proceed informally on a complaint against a child under the age of 16 years who was charged with the commission of a delinquent act.

We look first at the relevant provisions of CJ § 3–810. References are to subsections and paragraphs of that section. The intake officer shall receive complaints from a

---

1. In Montgomery County "court" means the District Court sitting as the juvenile court. Elsewhere, it means the circuit court of a county or Baltimore City sitting as a juvenile court. Maryland Code (1957, 1984 Repl., 1988 Cum.Supp.) § 3–801(i) of the Courts and Judicial Proceedings Article (CJ).

2. "'Intake officer' means the person assigned to the court by the Juvenile Services Agency to provide the intake services set forth in [subtitle 8—Juvenile Services, of Title 3—Courts of General Jurisdiction—Jurisdiction/Special Causes of Action]." CJ § 3–801(*o*).

person or agency having knowledge of facts which may cause a person to be subject to the jurisdiction of the court. (a)(1). He shall make an inquiry as to whether the court has jurisdiction and whether judicial action is in the best interests of the public or the child. (b)(1). Thereafter he may:

(i) authorize the filing of a petition;[3]

(ii) conduct a further investigation into the allegations of the complaint;

(iii) propose an informal adjustment of the matter; or

(iv) refuse authorization to file a petition.

*Id.* The intake officer may conduct a further investigation if he concludes it is necessary to reach a decision. (d).

The intake officer may propose an informal adjustment of the matter if based on the complaint, his preliminary inquiry, and such further investigation as he may make, he concludes that the court has jurisdiction but that an informal adjustment, rather than judicial action, is in the best interests of the public and the child. If the intake officer proposes an informal adjustment, he shall inform the parties of the nature of the complaint, the objectives of the adjustment process, the conditions and procedures under which it will be conducted, and the fact that it is not obligatory. The intake officer shall not proceed with an informal adjustment unless all parties[4] to the proceeding consent to that procedure. (e).

During the informal adjustment process, the child shall be subject to such supervision as the intake officer deems appropriate; however, no party is compelled to appear at any conference, produce any paper, or visit any place.

---

3. As to the petition, *see* CJ § 3–812; Maryland Rule 901(b)(3) and 903.

4. " 'Party' includes a child who is the subject of a petition, the child's parent, guardian, or custodian, the petitioner and an adult who is charged under § 3–831 of [the Courts and Judicial Proceedings Article]." CJ § 3–801(q). Section 3–831 concerns the liability of an adult contributing to certain conditions of a child.

The informal adjustment process shall not exceed 90 days unless that time is extended by the court. If all of the parties do not consent to an informal adjustment, or such adjustment cannot, in the judgment of the intake officer, be completed successfully, he shall authorize the filing of a petition or deny authorization to file a petition pursuant to subsection (g).

(f). Subsection (g) prescribes:

If based upon the complaint, his preliminary inquiry, and such further investigation as he may make, the intake officer concludes that the court has no jurisdiction, or that neither an informal adjustment nor judicial action is appropriate, he may deny authorization to file a petition. He shall, in that event, inform the following persons, through use of the form prescribed by § 3–810.1 of this article, of his decision, the reasons for it, and their right of review provided in this section:

(1) The victim;

(2) The arresting police officer; and

(3) The person or agency that filed the complaint or caused it to be filed.

The right to appeal the intake officer's denial of the authorization to file a petition is set out in subsection (h)(1):

If the complaint alleges the commission of a delinquent act and the intake officer denies authorization to file a petition, the following persons may appeal the denial to the State's Attorney:

(i) The victim;

(ii) The arresting police officer; and

(iii) The person or agency that filed the complaint or caused it to be filed. In order for an appeal to be made, it must be received by the State's Attorney's office within 30 days after the form prescribed by § 3–810.1 is mailed by the juvenile intake officer to the person being informed of the intake officer's decision.

Paragraph (2) of subsection (h) announces the course to be followed by the State's Attorney upon receiving notice of the appeal:

The State's Attorney shall review the denial. If he concludes that the court has jurisdiction and that judicial action is in the best interests of the public or the child, he may file a petition. This petition shall be filed within 30 days of the receipt of the complainant's appeal.

Section § 3–810 plainly spells out when an appeal may be taken from an action of the intake officer. It is only upon an intake officer's denial of authorization to file a petition that an appeal is authorized. Subsection (h). As we have seen, in general, the intake officer may deny authorization to file a petition if he concludes that "neither an informal adjustment nor judicial action is appropriate...." Subsection (g). Specifically, however, if he has decided to proceed by way of informal adjustment, and the process has begun, he may, *during the informal adjustment process,* deny authorization to file a petition (or authorize the filing of a petition) when, in his judgment, the informal adjustment cannot be completed successfully. Subsection (f). The statute could not be more clear. The denial of authorization to file a petition and the proposal to proceed with an informal adjustment, consummated by agreement of the parties, are separate and distinct. The former triggers the appeal; the latter does not.

This reading of the statute is supported by the context within which its language was adopted. The law we have outlined is in substantial part that which was enacted in 1975. It followed in the wake of *Matter of Trader,* 272 Md. 364, 325 A.2d 398 (1974), and its siblings, which expressed concern about the differences between the juvenile law applicable to Montgomery County and that applicable to the rest of the State. The Chief Judge of this Court in his State of the Judiciary Address before the 1975 General Assembly urged the legislature to take action to unify the juvenile court system, declaring: "No more important piece of legis-

lation will come before this body this session." The then Governor had recognized "the need to reconcile the juvenile justice statutes of Montgomery County with those of the rest of the State." He believed that such a change should be made, "combining the best features of both statutes" and that "the views of judges, official and private citizens should be taken into account in the process." The Governor directed his Chief Legislative Officer, Alan M. Wilner, now a judge of the Court of Special Appeals, "to undertake an immediate study of the problem and make recommendations on how best to proceed." [5] The result was the introduction in 1975 of bills representing the administration's proposals (H.B. 726 and S.B. 291) and bills presenting other views (H.B. 726 and S.B. 618). Extensive testimony was presented and numerous letters were received expressing "the views of judges, officials and other citizens, both in Montgomery County and elsewhere." Much debate followed. *See* the bill files of the legislative committees. The result was a major revision of the former law. The focus was originally limited to uniformity throughout the State. A number of substantive changes in the old law, however, found their way into the new law. There emerged a comprehensive legislative scheme designed and carefully tailored to promote the declared legislative purposes, CJ § 3–802(a), with the admonition that the juvenile causes law "be liberally construed to effect these purposes," § 3–802(b). Among the stated purposes were:

(1) To provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this subtitle; and to provide for a program of treatment, training, and rehabilitation consistent with the child's best interests and the protection of the public interest;

---

5. *See* letter under date of 24 July 1974 from Governor Marvin Mandel to the Director of Administrative and Public Relations of Boys' Town Homes of Maryland in the legislative file of the House Judiciary Committee with respect to H.B. 483.

(2) To remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior;

(3) To conserve and strengthen the child's family ties and to separate a child from his parents only when necessary for his welfare or in the interest of public safety. . . .

CJ § 3–802(a). *See In re Keith W.,* 310 Md. 99, 106–107, 527 A.2d 35 (1987); *In re DeWayne H.,* 290 Md. 401, 406, 430 A.2d 76 (1981); *In re Laurence T.,* 285 Md. 621, 625–627, 403 A.2d 1256 (1979).

There would be a serious interference with the legislative scheme and the purposes behind it to thrust a child into the judicial system by permitting an appeal short of a denial of authorization to file a petition. If the intake officer concludes that an informal adjustment is in the best interest of the public or the child and receives the consent of the parties, he has 90 days (or longer with the approval of the court) to see if the process will be successful. For this process to be shut down by an appeal before the intake officer is satisfied that it is in vain obviously would be directly contrary to the letter of the law, the spirit of the law, the avowed purposes of the law, and the legislative scheme. The provisions of the juvenile causes law on their face plainly show that the legislature intended no such result.

## IV

The juvenile law has been subject to a number of amendments since 1975 but there are only two which are of significance here, Acts 1980, ch. 685 and ch. 552.[6] These

---

6. This legislation and two other enactments, Acts 1980, ch. 304 and ch. 88, were prompted by the Special Joint Committee on Program Evaluation of Juvenile Justice and prodded by our holding in *In Re James S.,* 286 Md. 702, 410 A.2d 586, decided 29 January 1980. There was concern about the filing of petitions to place a child in the judicial mainstream. In *James,* we held that a petition must be dismissed if not filed within the statutorily designated time. 286 Md.

amendments, in the eyes of the State, roiled the waters. Chapter 685 created a new section, 3–810.1, which prescribed a form which "[a]n intake officer shall use ... to inform persons, in accordance with § 3–810, of his decision to deny authorization to file a petition for the alleged commission of a delinquent act." Subsection (a). *See* Appendix hereto. Chapter 552 amended § 3–810(g), insofar as is relevant here, to require the intake officer, through the use of the form, to inform the victim, the arresting police officer, and the complainant of the denial of authorization to file a petition. The Act also included an amendment to § 3–810(h)(1) to give those same persons the right to appeal to the State's Attorney upon the denial of authorization to file a petition when the complaint alleges the commission of a delinquent act.[7] The form was tied into the appeal process by requiring that the appeal "must be received by the State's Attorney's office within 30 days after the form prescribed by § 3–810.1 is mailed by the juvenile intake officer to the person being informed of the intake officer's decision." Section 3–810(h)(1)(iii).

We see no conflict between § 3–810 and § 3–810.1 or any ambiguity, patent or latent. The prescribed form declares flatly that it is to be used only with reference to a denial by the intake officer of his authorization to file a petition. It is

---

at 713, 410 A.2d 586. A number of persons expressed the fear that hundreds of petitions would have to be dismissed.

Also, the Police–Community Relations Committee of Baltimore City made known to the legislature its view that appeals from the decision of the intake officer should be encouraged. It advocated that the arresting officer be notified directly of the intake officer's decision and that he be given the right to appeal, neither of which was provided in the existing law. The Juvenile Services Agency (JSA) informed the Senate Committee that it had, in fact, been notifying the victim, the arresting officer, and the complainant of the intake officer's decision since the early part of 1979. JSA submitted to the Committee a copy of the form it had been using. It appears to be the form statutorily prescribed. *See,* the 1980 legislative file of Senate Bills 317 and 318, Senate Judicial Proceedings Committee.

7. Under the 1975 law only the complainant had to be informed of the denial and only the complainant was given the right to appeal from the denial.

from this decision, as we have seen, that an appeal will lie. The reasons spelled out in the form which may be given in explanation of the decision do not state, imply, or infer that the form is intended in any way to restrict, curtail, or undermine the authority of the intake officer to proceed by way of informal adjustment, a process so important in the legislative scheme. And the reasons indicated by the form provide no support for the view the State suggests, that by prescribing the form the legislature intended to expand the right to appeal so carefully detailed in § 3–810. In short, the reasons in the form to be checked, when applicable, are simply to supply those persons entitled to know with a full explanation of why the intake officer denied authorization to file a petition when he has, in fact, denied the authorization. They serve no other purpose.

No ambiguity or uncertainty as to the right of appeal arises from §§ 3–810 and 3–810.1. Rather, it stems from the use of the form by the Juvenile Services Agency. The form sent the arresting officer over the signature of the intake officer was headed:

CLOSING/INFORMAL ADJUSTMENT NOTIFICATION
TO VICTIM, COMPLAINANT AND/OR
POLICE OFFICER.

Otherwise, the notice followed the statutory form, including information of the right to appeal. An "Appeal Form" was attached. The indication that an appeal could be taken at that stage of the proceeding was erroneous. The intake officer had concluded that the route of informal adjustment should be tried and, with the agreement of the parties, it was actually underway.[8] The agreement of the arresting officer was not required for the informal adjustment process, and the statute does not provide that he be notified.

---

8. A memorandum of the Juvenile Services Agency in the record states that "Kemmo has already completed the JETS [Juvenile Educational Training Seminar] Program and according to their report, he did very well."

The intake officer had not denied authorization to file a petition. He could have done so, as we have seen, during the course of the informal adjustment process if, in his judgment, the process could not be completed successfully, but he had made no such judgment. If the intake officer wanted the arresting officer to know that he was attempting to resolve the complaint by informal adjustment, even though a notice was not required, he employed the wrong way to do it and in doing so gave erroneous information. Whether the notice was sent as the result of a misreading of the plain provisions of the statute, or through inadvertent entanglement in bureaucratic routine, or was in accord with a practice of the agency is of no matter. The notice may have bollixed the orderly resolution of the complaint, but it had no effect on the law.[9]

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED;

COSTS TO BE PAID BY MONTGOMERY COUNTY.

Concurring opinion by McAULIFFE, J., in which BLACKWELL, J., joins.

#### APPENDIX

§ 3–810.1. **Form of notice of intake officer's decision on complaint.**

(a) An intake officer shall use the following form to inform persons, in accordance with § 3–810, of his decision to deny authorization to file a petition for the alleged commission of a delinquent act:

> Date: (Date form is mailed)
> Re: ..............................
> Offense No.: ....................
> Date of Offense: ................
> Nature of Offense: ..............

9. We note that a bill has been introduced in the House of Delegates FOR the purpose of clarifying that an intake officer's decision to informally adjust a complaint constitutes a denial of authorization to file a petition; and generally relating to the procedures regarding informal adjustments and appeal therefrom. H.B. No. 365 (Departmental—Juvenile Services Agency). It repeals and reenacts with amendments CJ § 3–810(b)(1), (f), and (g). It has gone through a first reading and has been referred to the Judiciary Committee. A hearing has been scheduled.

**206**

### APPENDIX—Continued

. . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . .

Dear . . . . . . . . :

I have reviewed the facts concerning the offense referred to above and have decided not to authorize juvenile court action. This decision included consideration of the facts of the case and the juvenile's involvement. Home, school, and community adjustment along with parental concern and control were examined. Past history with the police and court was also considered.

The reasons for this decision are as follows:

. . . . . . . . . . . . . . . The juvenile was issued a reprimand and warned against future involvement in delinquent activities.

. . . . . . . . . . . . . . . The juvenile is currently under supervision of the juvenile court.

. . . . . . . . . . . . . . . The juvenile will receive informal supervision by this intake officer. This will include counseling, and possibly referral to a program or agency to further work with problems seen as important to the juvenile's future adjustment.

. . . . . . . . . . . . . . . The juvenile has successfully completed a pretrial program of intensive counseling and supervision of 45 to 90 days, and has shown a satisfactory adjustment during this time.

. . . . . . . . . . . . . . . This case is not legally sufficient.

Additional Comments: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

If you disagree with this decision and desire to appeal, you must fill in the form provided below and send it to the State's Attorney's office so that it is received in that office by . . . . . . . . . . .

(Date)

If you have any questions or want to talk about this case with me before making a decision on whether to appeal, please call me at . . . . . . . . . . . . . . . . . . . .

(Phone Number)

However, if you do this, it will not extend the 30-day period within which you are allowed to appeal.

Sincerely,

. . . . . . . . . . . . . . . . . . . . . . . . . . . .
Intake Officer

. . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

APPENDIX—Continued

If you disagree with the above decision of the intake officer, fill out the form below and send it to:

```
.............................. (To be filled in by intake officer
.............................. prior to mailing to person being
.............................. informed of intake decision)
(Name and address of
appropriate State's Attorney
authority)
Re: ......................... (To be filled in by intake officer
Offense: ..................... prior to mailing to person being
Date of Offense: ............ informed of intake decision)
Nature of Offense: ...........
```

I have been informed by the juvenile intake officer of his decision not to forward this case for action in the juvenile court.

I disagree with this decision and ask that the State's Attorney's office review it and decide whether court proceedings should be carried out.

```
 ..............................
 Signed
```

(b) The use of the form prescribed by subsection (a) of this section does not preclude the Juvenile Services Agency from sending other information, in addition to this form, to explain the intake officer's decision and advise persons of their right to appeal the decision of the intake officer. (1980, ch. 685; 1986, ch. 217; 1987, ch. 290.)

McAULIFFE, Judge, concurring.

I concur in the result. I do not agree that the legislature intended to grant to the intake officer the ultimate authority to close any juvenile case by informal adjustment. I suspect the legislature intended to grant a measure of oversight to the state's attorney in these cases, and therefore intended to treat a decision to terminate a case by informal adjustment as one form of denial of authorization to file a petition. The structure of the form required by § 3–810.1 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 1984 Repl.Vol., 1988 Cum.Supp.) strongly suggests that this was the legislative intent. The contemporaneous interpretation given the relevant statutes by the juvenile services agency, as evidenced by the utilization of the form in the circumstances of this case, is also consistent with that intent.

The suspicion I harbor concerning the legislative intent is not sufficiently strong, however, to persuade me that this

**208**

Court should override the otherwise clear language of the statute. If the result we reach is at variance with the true legislative intent, as I suspect it is, the General Assembly should make the correction.

Judge BLACKWELL has authorized me to state that he joins in this concurring opinion.