JAMES D. BOONE *v.* STATE OF MARYLAND

[No. 1770, September Term, 1982.]

*Decided October 7, 1983.*

The cause was argued before GILBERT, C. J., and WILNER and BISHOP, JJ.

*George Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Stephanie J. Lane, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, W. Charles Rogers, III, Assistant Attorney General, Kurt L. Schmoke, State's Attorney for Baltimore City,* and *Marion Erlich, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

BISHOP, J., delivered the opinion of the Court.

James Boone appeals an order of the Criminal Court of Baltimore, (now the Circuit Court for Baltimore City), revoking his probation. He suggests that the court erred:

(A) because it relied on a conviction that occurred after expiration of his probationary term, and

(B) because there was an inexcusable delay of almost nine years between issuance of the warrant alleging a probation violation and the revocation hearing. Inasmuch as we reverse on the basis of the latter issue, there is no need to address the former issue.

## The Facts

On October 17, 1972, the circuit court suspended appellant's eight-year sentence for robbery and imposed a five-year term of probation. The conditions of probation required, *inter alia,* that appellant report to his probation officer as directed, conduct himself in a law-abiding manner, and receive treatment for alcoholism. About one year later, appellant's probation officer notified the court that appellant had missed seven appointments and had failed to take treatment for alcoholism. Based on these allegations, the court issued a warrant on October 15, 1973, for appellant's arrest.

On July 20, 1982, almost nine years after issuance of the warrant, appellant was brought before the court for a probation revocation hearing. The docket entries and statements at the hearing indicate that the following events transpired between the warrant issuance and the hearing:

June 10, 1976 — Appellant sentenced for non-support.

August 23, 1977 — Appellant received thirty-day sentence in Baltimore City jail for larceny.

September 5, 1977 — Appellant again sentenced for non-support; incarcerated until December 5, 1977.

September 27, 1979 — Docket entry — "Sheriff could not locate warrant. Violation of probation still outstanding."

December 12, 1979 — Docket entry — "Notified Probation Agent, Maurice Jacobs, that Sheriff's Office could not locate warrant and that Judge Perrott's office does not have any record of this violation case. He informed clerk that this case was still outstanding and that it is the Sheriff's problem if they cannot find the warrant. Warrant is still outstanding."

April 28, 1982 — Appellant convicted in Central District Court of being rogue and vagabond. Placed on one year supervised probation.

May 5, 1982 — Appellant arrested at probation office.

May 12, 1982 — Docket entry — "Violation of Probation warrant returned Cepi Jail."

May 17, 1982 — Docket entry — "Notice of Return of Warrant filed. ... Original Warrant not returned by Sheriff."

On July 20, 1982, appellant moved to dismiss the charges against him because of the delay in bringing the case to a hearing. The court denied the motion. It then granted a continuance so that the State could additionally charge appellant with committing crimes, in violation of his probation order.

When the revocation hearing resumed on August 3, 1982, appellant's counsel argued that:

". . . this warrant was taken out on Mr. Boone back in 1973, in October of '73. Mr. Boone was placed on a rather long suspended sentence, and a

long probationary period. . . . He was in before this Court on June 10, 1976, was found guilty of non-support, for violation of probation, was sentenced to eighteen months to the Department of Correction.

* * *

He was before the Court on August 23, 1977 for larceny, and he was sentenced to thirty days to the Baltimore City Jail at that time. He was also again before the Court on September 15, 1977, for non-support.

* * *

In 1976, when this case should have been brought before Your Honor, not some four, or five, or six years later. He would have been sentenced, been paroled, he would have been on the street by now.

* * *

MR. RAGLAND: But I feel he should be found not guilty in view of the State's conduct in this particular case. It is not just the conduct by the State, but they are responsible for finding — it is their responsibility —

THE COURT: Absolutely, absolutely.

THE COURT: Absolutely. They had a responsibility to cover the streets and knock on every door —

MR. RAGLAND: We are not saying they have to cover the streets, nor knock on every door. But when he is in their custody four times —

THE COURT: . . . when I extend probation to somebody, and they foul me up, there is no way I'm going to let him go simply because of a very capable lawyer's argument like yours. . . . there is no way this man is going to get me with technicalities unless the Court of Special Appeals, or the Court of

Appeals says he is going to. I trusted him. He let me down. I'm not concerned with his non-support. That's between he and his ex-wife, whoever she may be. But I am concerned about some of the other convictions.

I find defendant guilty."

The court then reimposed appellant's original sentence of eight years, minus ten months for time already served.

### The Law

### Delayed revocation Hearing [1]

Appellant alleges that the nine-year delay between issuance of the warrant on October 15, 1973, and the initial hearing on July 20, 1982, constituted deprivation of due process. It is by now well settled that a probation revocation hearing, which threatens to deprive the probationer of liberty, must be conducted with due process. *Gagnon v. Scarpelli,* 411 U.S. 778, 782 (1973); *Morrissey v. Brewer,* 408 U.S. 471 (1972); *Vitek v. Jones,* 445 U.S. 480, 488 (1980); *See Swan v. State,* 200 Md. 420, 425 (1952); *State v. Bryan,* 284 Md. 152, 159 n. 6 (1978); *Herold v. State,* 52 Md. App. 295, 301 (1982); 11 U. Balt. L. Rev. 272, 296 (1982). In order to comply with the dictates of due process, the State must bring about the revocation hearing with due diligence or reasonable promptness so as to avoid prejudice to the defendant. *State v. Berry,* 287 Md. 491, 500, 13 A.L.R. 4th 1231 (1980). *Accord State v. Miller,* 289 Md. 443 (1981). *See* 11 U. Balt. L. Rev. at 298, Annot. 12 A.L.R. 4th at 1252-3. The Court of Appeals states in *Berry:*

"We also believe that whether the State has been reasonable in proceeding with a revocation hearing is the test. We do not perceive the need to set forth

---

1. Although the issue was not raised by the appellant, the failure of the State to charge appellant with a violation of probation based on the larceny conviction until almost five years after the conviction is even more egregious than the delayed hearing.

the factors a court will consider in determining whether the State has been diligent in instituting and conducting hearings under the statute here involved. However, we think it fair to say that, at a minimum, the State should make reasonable efforts to initiate the proceedings and to locate and serve the defendant with process so as to bring him to trial promptly. On the other hand, we think the trial court should consider the availability of the defendant to receive such process and the extent to which he has made his presence known in the community in which he lives. While what action is timely, diligent or reasonable will differ on a case by case basis, we do believe that inactivity and inattention by the State for an inordinate period of time, where the defendant has been available and has not concealed his whereabouts, may be sufficient to persuade a court that fundamental fairness should prevent the State from proceeding with the revocation hearing."

287 Md. at 500. *Accord Clipper v. State,* 295 Md. 303, 312 (1983).

In this case, the warrant was issued promptly; the only question is whether the State acted diligently in serving it on appellant. The State suggests that appellant's evasion of probationary supervision tolled the probationary term. As the State observes, federal decisions have held that the running of the probationary term is suspended when the probationer's wrongful act results in termination of probationary supervision. *E.g., United States v. Workman,* 617 F.2d 48, 51 (4th Cir. 1980); *Hall v. Schaeffer,* 556 F.Supp. 539, 541-43 (E.D. Pa. 1983); *United States v. Green,* 429 F.Supp. 1036 (W.D. Tex. 1977); *United States v. Gerson,* 192 F.Supp. 864 (E.D. Tenn. 1961), *aff'd.* 302 F.2d 430 (6th Cir. 1962). There is some tension between this holding and the requirement that the court specify the maximum term of probation, which generally cannot exceed the statutory limit of five years. *See Kupfer v. State,* 287 Md. 540 (1980); *Laurie*

*v. State,* 29 Md. App. 609 (1976). Md. Ann. Code, art. 27, § 641 (1982 repl. vol.). Because such a holding is unnecessary to our disposition of this case, we decline to adopt it.

A tolling, *vel non,* of the probationary term, is relevant only to determination of appellant's first issue — whether the 1982 conviction occurred within the period of probation. As we have noted, we do not reach this issue. Determination of the second issue — whether delay in execution of the arrest warrant denied due process — turns not only on the probationer's evasion of supervision, but his evasion of service. Although a probationer may, by the same wrongful action, evade both supervision and service, such is not always the case. In this case, even though appellant ceased reporting to his probation officer, he was nonetheless available for service in 1976 and 1977, when he was sentenced and incarcerated for non-support and larceny. According to *Brady v. State,* 291 Md. 261, 267 (1981), "the State, in the performance of its public trust, has a duty to coordinate the efforts of its various criminal divisions in attempting to locate a defendant." Even though appellant was incarcerated for three months in late 1977, the State did not manage to serve the warrant upon him; this indicates, under the rationale of *Brady,* lack of reasonable diligence.

The question then becomes whether the delay between when the revocation hearing should have been held, had the State exercised reasonable diligence, and when it was actually held is sufficiently harmful to constitute a deprivation of due process. Had the State exercised reasonable diligence, the revocation hearing probably would have been held at the latest by January of 1978 — shortly after appellant's 1977 incarceration. The hearing was not, in fact, held until July 1982 — a four and one-half year delay. Despite the length of the delay, the State maintains that appellant has neither plead nor proved prejudice therefrom. In *Berry,* where there was a two year delay between issuance of an arrest warrant and the probation revocation hearing, the Court of Appeals declared:

> "We need not engage in any lengthy analysis or balancing process because defendant has alleged no prejudice as a result of the delay. Indeed, we can envision few circumstances where a defendant would be able to show prejudice when as here the issue is a narrow one of compliance with the court's order for support." 287 Md. at 501.

Actual prejudice, as defined in another context (the right to speedy trial), comprises three elements of harm to the accused: (i) oppressive incarceration, (ii) anxiety and concern of the accused, and (iii) impairment of the accused's defense. *Brady v. State, supra,* 291 Md. at 267.[2] Although there is no evidence of the third element in this case, a revocation of probation after such a significant delay could indeed generate anxiety and concern. A probationer, or one who has completed his probation, "can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Morrissey v. Brewer, supra,* 408 U.S. at 482, *quoted* in *Greenholtz v. Inmates of Nebraska Penal & Cor.,* 442 U.S. 1, 9 (1979). The longer he remains free to form these attachments, the greater is his interest in knowing that his liberty is secure and stable. If this security is threatened by a revocation hearing brought years after an alleged violation, the accused would naturally suffer an emotional stress that can be presumed to result in the ordinary person, upon learning that his freedom is at risk. *Brady v. State, supra,* 291 Md. at 268, citing *Jones v. State,* 279 Md. 1, 17 (1976) which quotes *Strunk v. United States,* 412 U.S. 434, 439 (1973).

In this case, almost nine years after issuance of the warrant and over four years after his 1977 incarceration, appellant was again arrested. He then apparently spent two months in jail awaiting a hearing.

---

**2.** Although we cite *Brady,* we are not here relying upon the Sixth Amendment, *Barker v. Wingo,* 407 U.S. 514, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972), speedy trial principles because they are clearly inapplicable. *See State v. Lawless,* 13 Md. App. 220, 229-230 (1971).

> "[T]his sudden awareness that he was not free, but still being held in jail . . ., must have generated a response more than mere anxiety. He had to be frustrated. In which event, the following two months in jail awaiting the outcome of the charges had to exacerbate his concern."

*Brady v. State, supra,* 291 Md. at 268.

Thus, as a result of the egregious delay in initiating his revocation hearing and his incarceration for two months, appellant suffered prejudice from anxiety and oppressive incarceration, even though his defense was not impaired.

The public has an interest in prompt revocation hearings. The purpose of probation is to rehabilitate the defendant. *Gagnon v. Scarpelli, supra,* 411 U.S. at 783 (1973). *See* Note, 42 U. Md. L. Rev. 196, 197 (1983). If this purpose is not being served, and a probationer remains a danger to society, the public interest dictates that the revocation hearing be brought promptly. A prompt hearing thus furthers the interests of both the accused and the public. *United States v. Tyler,* 605 F.2d 851 (5th Cir. 1979).

The State, by failing to act with reasonable promptness, harmed the public interest and deprived appellant of due process.

> *Judgment reversed.*
> *Costs to be paid by Mayor & City*
> *Council of Baltimore.*