578 A.2d 223

**In re STEVEN B.**

**In re MILTON P.**

**In re MARCOS R.**

**Nos. 1669, 1687 and 1688 Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Aug. 29, 1990.

Certiorari Denied Dec. 20, 1990.

**2**

Cathleen C. Brockmeyer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. on the brief), Baltimore, for appellant.

Julia Doyle Bernhardt, Asst. Public Defender (Alan H. Murrell, Public Defender on the brief), Baltimore, for appellees.

Submitted before GILBERT, C.J., and ALPERT and CATHELL, JJ.

GILBERT, Chief Judge.

The State has appealed from a dismissal by the Juvenile Division of the District Court of Maryland for Montgomery County of three juvenile cases. Judge Douglas H. Moore Jr. of the Juvenile Court dismissed the cases because of the failure by the Department of Juvenile Services (DJS) to comply with Md.Cts. & Jud.Proc.Code Ann. (Courts Art.) § 3–810(b)(3)(i). We shall affirm the Juvenile Court.

Prior to July 1, 1989, Courts Art. § 3–810(b)(3)(i) and (ii) provided:

(i) "If a complaint is filed that alleges the commission of a delinquent act by a child who is 16 years old or older, which would be a felony enumerated in Article 27, § 441(e) of the Code if committed by an adult, the intake officer shall immediately forward the complaint to the State's Attorney.

(ii) If a complaint is filed that alleges the commission of a delinquent act by a child who is 16 years old or older, which would be a felony other than one enumerated in Article 27, § 441(e) of the Code if committed by an adult,

and if the intake officer has denied authorization to file a petition, the intake officer shall immediately:

    1.  Forward the complaint to the State's Attorney; and

    2.  Forward a copy of the entire intake case file to the State's Attorney with information as to any and all prior intake involvement with the child."

Courts Art. § 3–810(b)(3)(i) was amended in 1989 to provide:

"If a complaint is filed that alleges the commission of a delinquent act which would be a felony if committed by an adult or alleges a violation of Article 27, Section 36B of the Code [wearing, carrying, transporting or using a handgun in a crime of violence] and if the intake officer denies authorization to file a petition or proposes an informal adjustment, the intake officer shall immediately:

    1.  Forward the complaint to the State's Attorney; and

    2.  Forward a copy of the entire intake case file to the State's Attorney with information as to any and all prior intake involvement with the child."

This statutory change eliminated the age requirement, so that the statute is now applicable to any child who has committed a crime which would be a felony if committed by an adult or is a handgun law violation. The 1989 amendment also combined subsections (i) and (ii) of the prior statute into a single subsection (i), eliminated the age minimum, and added the proviso that the intake officer's proposed "informal adjustment" was to be forwarded to the State's Attorney.

■ The Secretary of DJS on July 1, 1989, the effective date of the statutory amendment, promulgated that Department's Policy Number 04.17.01, which provided, in pertinent part:

"*POLICY:* It is the policy of the Department of Juvenile Services upon receiving a complaint that alleges the commission of a delinquent act which is determined to be a felony or a misdemeanor handgun violation to insure a consistent and fair application of the statutes to all par-

ties and to render a decision that serves the best interests of the community and the youth.

Therefore, it is the policy of the Department of Juvenile Services that if the Intake Officer receives a complaint that alleges the commission of a delinquent act which is determined through a preliminary inquiry to be a felony or a misdemeanor handgun violation, the Intake Officer shall immediately authorize the filing of a petition and forward the complaint to the Office of the State's Attorney...."

In response to the Secretary's letter to him outlining the new departmental policy, the Chairman of the House of Delegates Judiciary Committee, Daniel M. Long,[1] opined:

"Among other changes, ... [Courts Art. § 3–810(b)(3)(i) ] requires, regardless of the age of a child, that if a complaint is filed that alleges the commission of a delinquent act which would be a felony or a handgun violation, and if the intake officer denies authorization to file a petition or proposes an informal adjustment, the intake officer shall immediately forward the complaint and a copy of the entire intake case file to the State's Attorney with information as to any and all prior intake involvement with the child.

After the complaint is forwarded to the State's Attorney, the State's Attorney is required to make a 'preliminary review' as to whether the court has jurisdiction and whether judicial action is in the best interests of the public or the child. After conducting the preliminary review, the State's Attorney may (1) file a petition; (2) seek a waiver; (3) refer the complaint to the DJS for informal disposition; or (4) dismiss the complaint.

On the other hand, the new DJS policies appear to set forth different procedures. With respect to felonies and handgun offenses, the DJS policy is to conduct a preliminary inquiry, but requires in *all* cases the filing of a

---

1. Chairman Long is now the Judge of the Circuit Court for Somerset County. He was appointed to that office June 23, 1990.

petition before forwarding the complaint to the State's Attorney.

My reading of Section 3–810(b) of the Courts Article is that a preliminary inquiry is required by an intake officer to make an initial determination as to whether the court has jurisdiction and whether jurisdiction is in the best interests of the public or the child.

The purpose of House Bill 925 was that the DJS could no longer unilaterally make a determination to close out a complaint for certain offenses by the denial of authorization to file a petition or the informal adjustment process. An initial determination by an intake officer in those cases is clearly intended to be reviewed by the State's Attorney. To aid the State's Attorney in conducting the preliminary review, the intake officer is required to forward the complaint and the entire intake case file with all information as to any and all prior intake involvement with the child. This requirement was not intended to be perfunctory. To the contrary, the requirement is beneficial to both the juvenile and the community at large.

Lastly, the new DJS policy applicable to intake practices regarding misdemeanors (other than handgun misdemeanors), which requires in every case 'further investigation' supplemental to the preliminary inquiry, is not the subject of any legislation enacted by the General Assembly during the 1989 Session. Section 3–810 of the Courts Article has long authorized an intake officer to conduct a 'further investigation' if the further inquiry is 'necessary in order to determine whether the court has jurisdiction or whether judicial action is in the best interests of the public or the child.' The statute clearly does not require such additional investigation in every case.

. . . .

If the above statutory policies are to be changed, I believe the changes should be accomplished through legislation rather than through the mechanism of policy statements.

Please contact me if you wish to discuss these matters in more detail."

We are not privy to whether the Secretary accepted the Chairman's invitation. In any event, the Secretary's policy is the root of the instant case.

Approximately one year ago the State filed delinquency petitions against Steven B., Milton P., and Marcos R. in the Juvenile Division of the District Court of Maryland for Montgomery County. Steven B. was charged with felony theft; Milton P. was charged in two separate petitions with felony theft and conspiracy; and Marcos R. was charged with felony theft, unauthorized use, and destruction of property. Each of the juveniles moved to dismiss the charges, and the trial judge granted the motions, reasoning that the cases were not reviewed initially by the intake officers but were "automatically" forwarded to the State with a recommendation that petitions be filed. The judge held that the legislative intent of Courts Art. § 3–810(b)(3)(i) was not being served. The judge concluded that the only alternative was a dismissal in light of the Court of Appeals ruling in *State v. In re Patrick A.,* 312 Md. 482, 540 A.2d 810 (1988).

The Court in *In re Patrick A., supra* at 488, 540 A.2d 810, stated, "It is clear that the Legislature intended that the information provided by the intake officer is to be considered as valuable input in determining whether a juvenile petition should be filed...." *See also In re Baron C.,* 77 Md.App. 448, 452, 550 A.2d 740 (1988), *cert. dismissed,* 316 Md. 571, 560 A.2d 1130 (1989); *In re Valita T.,* 75 Md.App. 156, 162, 540 A.2d 854 (1988). The Court in *In re Kemmo N.,* 315 Md. 193, 198–99, 553 A.2d 1273 (1989), reiterated the authority of the intake officer to handle a juvenile's case through the intake stage.

The State argues that the 1989 changes to § 3–810(b)(3)(i) increased the State's Attorney's role as "final arbiter" over a petition. Not only, the State says, is the State's Attorney the "final arbiter" when an intake officer authorizes a

petition and when that authorization is denied but also when informal adjustment is proposed. Thus, the State contends that the policy adopted by the DJS does not violate § 3–810(b)(3)(i), reasoning that the Department still conducts a preliminary inquiry before forwarding the file to the State's Attorney. We agree with the State that "the standard [DJS' policy] does violate the spirit of Section 3–810 to the extent that the legislature desired to have the intake officer make a front line determination as to the disposition of a complaint." We disagree, however, with the State's conclusion that the policy's violation of the statute is limited to its "spirit."

One of the purposes of Courts Article, Subtitle 8, Juvenile Causes is "to provide for a program of treatment, training, and rehabilitation consistent with the child's best interests and the protection of the public's interest." § 3–802(a)(1). In order to ensure that the best interests of the child are advocated, it is necessary that both DJS and the State adhere to the procedural requirements of § 3–810 as mandated by the General Assembly.

DJS bases its authority to adopt its policy on Courts Art. § 3–810; Md.Ann.Code art. 83C, § 2–102; and Md.Ann.Code art. 27, § 36B. Article 83C, § 2–102(b)(2) makes perspicuous that the Secretary of DJS "is responsible for the operation of the Department and shall establish guidelines and procedures to promote the orderly and efficient administration of the Department...."

Although the Secretary may establish procedures within DJS for the administration of the Department, she may not adopt procedures that are contrary to Courts Art. § 3–802. *See* Md.Ann.Code art. 83C, § 2–101(b), which flatly declares that "[i]t is the policy of the State that the Department comply with the provision of § 3–802 of the Courts ... Article." That section spells out the purposes of Title 8, Juvenile Causes, which are:

> "(a)(1) To provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this subtitle; and to provide for a

program of treatment, training, and rehabilitation consistent with the child's best interests and the protection of the public interest;

(2) To remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior;

(3) To conserve and strengthen the child's family ties and to separate a child from his parents only when necessary for his welfare or in the interest of public safety;

(4) If necessary to remove a child from his home, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents;

(5) To provide judicial procedures for carrying out the provisions of this subtitle.

(b) This subtitle shall be liberally construed to effectuate these purposes."

We think it crystal clear that in enacting Courts Art. § 3–810(b)(3)(i) the Legislature made manifest that it placed value on the input of the intake officer in determining whether a petition should be filed or instead that there be an "informal adjustment." DJS may not adopt a policy which ignores, limits, or restricts the intake officer's role in the juvenile cause process. The intake officer should conduct a more detailed review of the case, rather then merely classifying the offense allegedly committed by the juvenile as falling within the ambit of § 3–810(b)(3)(i) and automatically authorizing the filing of a petition charging delinquency. The role of the intake officer is to review fully the case so as to determine whether it would be more appropriately handled through informal adjustment or even to recommend that no further action be taken. The State's Attorney should consider the intake officer's recommendations in determining the appropriateness of filing a petition in that particular juvenile case.

We make clear that the Secretary of DJS is not free to ignore the purposes of the Juvenile Causes statute and adopt policies that are contrary to the legislative will even if those policies are considered by DJS to be more expedient.

■ We turn now to a consideration of the trial judge's dismissal of the charges rather than permitting the State to start over inasmuch as jeopardy had not attached. *See Parks v. State,* 287 Md. 11, 410 A.2d 597 (1980); *State v. Despertt,* 73 Md.App. 620, 535 A.2d 963 (1988); *In re Darnell F.,* 71 Md.App. 584, 526 A.2d 971, *cert. denied,* 311 Md. 144, 532 A.2d 1371 (1987); *State v. Suter,* 38 Md.App. 72, 379 A.2d 425 (1977).

Courts Art. § 3–810(b)(1) provides that the intake officer "shall make a preliminary inquiry within 15 days as to whether the court has jurisdiction and whether judicial action is in the best interest of the public or the child." If, as we have seen, the complaint alleges a delinquent act that if committed by an adult would be a felony or alleges a violation of the handgun statute and the intake officer denies authorization to file a petition or prepares an informal adjustment, he or she must immediately forward the matter to the State's Attorney in accordance with § 3–810(b)(3)(ii).

The State's Attorney "shall within 30 days of the receipt of the complaint ... unless the court extends the time":

1) file a petition,
2) refer the matter to DJS for informal disposition, or
3) dismiss the complaint.

The records do not disclose in the cases *sub judice* when the State's Attorney received the complaints from the intake officer. We have no way of knowing whether the petitions were filed within the prescribed time frame. Nevertheless, even if we assume *arguendo* that the petitions were timely filed, the ultimate outcome is unchanged. There is simply no possible way that the matters may be referred back to the intake officer for compliance with § 3–810(b)(3)(ii). The fifteen-day period during which the

**10**

intake officer is required to make his or her preliminary inquiry has long since expired and had lapsed by approximately three months before the cases were called for trial in the juvenile court.

Judge Moore was afforded but two alternatives: 1) ignore the statute and legislative purpose by overruling the motion to dismiss and proceeding to trial or 2) dismiss the charges. He opted for the latter. We agree.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY MONTGOMERY COUNTY.