599 A.2d 1233

**In re KEVIN EUGENE C.**

**No. 484, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Jan. 8, 1992.

Revised and Refiled Feb. 12, 1992.

Certiorari Denied April 24, 1992.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Lawrence A. Dorsey, Jr., State's Atty. for Frederick County, Frederick, on the brief), for appellant.

Claudia A. Cortese, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellee.

Argued before BISHOP, WENNER and DAVIS, JJ.

DAVIS, Judge.

On December 13, 1990, the State filed a delinquency petition against the appellee, a juvenile, charging him with what would be assault with intent to maim and other related charges if committed by an adult. On March 11, 1991, pursuant to the appellee's motion to dismiss, the Circuit Court for Frederick County (Stepler, J.) dismissed the pending delinquency petition against the appellee. The State noted a timely appeal and presented the following question for our review:

> Did the trial court err in dismissing the delinquency petition of the appellee because an intake interview was not conducted?

### Facts

On September 19, 1990, a complaint was filed alleging that the appellee had committed acts which would have been, if committed by an adult, assault with intent to maim, disfigure, and disable; assault; and assault and battery against Larry Joseph Keyser on September 18, 1990.

In a form letter dated November 28, 1990, the appellee was informed of the charges against him. The appellee was further advised that, "[a]s required, when a complaint is received by the Intake Officer which would be a x felony offense ... if it had been committed by an adult, it is to be forwarded immediately to the Office of the State's Attorney." [1]

At the appellee's delinquency hearing, evidence was presented that the appellee was twice scheduled to have an intake interview, and that, for various reasons, both interviews were postponed. When calling to schedule a third interview, counsel for the appellee informed the intake officer that the appellee would plead not guilty [2] to the alleged offenses. The intake officer then replied,

---

1. Counsel for the appellant explained that the form used by the intake officer was created under the superseded version of Md.Cts. & Jud. Proc.Code Ann. § 3–810, which authorized immediate forwarding of felonies and handgun violations to the State's Attorney without review. Counsel for the appellant stated that the appellee's case was reviewed before it was forwarded to the State's Attorney.

2. In juvenile proceedings the more precise term to use when referring to the plea of the respondent is "not involved" as opposed to "not

"[O]h, then we don't need an interview," and no interview was ever held. Other than the aforementioned letter and a letter scheduling the appellee's first intake interview, there is no other evidence in the record to suggest that the intake officer performed a preliminary inquiry in this case.

On February 27, 1991, the appellee filed a motion to dismiss the outstanding delinquency petition which stated that the appellee was not given an intake interview. The appellee's motion went on to say that, because this procedure was not followed, the State had failed to adhere to the mandate of Md.Cts. & Jud.Proc.Code Ann., § 3–810, which addresses the initial juvenile complaint and preliminary procedures; and the petition should therefore be dismissed.

■ On March 11, 1991, the Frederick County Circuit Court, sitting as a juvenile court, granted the appellee's motion for dismissal. The State then noted the present appeal. We hold that under the circumstances of this case the preliminary inquiry required in juvenile matters by § 3–810(c) could not be satisfied absent an interview with the child; the intake officer's discretion to dispense with an interview as a part of the preliminary inquiry is to be narrowly viewed. We therefore affirm and explain.

## Discussion

The issue presented in this appeal is one of first impression in this State.[3] The statute which governs juvenile criminal matters is Md.Cts. & Jud.Proc.Code Ann., § 3–810 (1989 Repl.Vol.) (1991 Cum.Supp.), which addresses the initial juvenile complaint and preliminary procedures. More specifically, § 3–810(c) provides, in pertinent part:

(c)(1) Except as otherwise provided in this subsection, in considering the complaint, the intake officer shall make a preliminary inquiry within 15 days as to whether the court has jurisdiction and whether judicial action is in the best interests of the public or the child. The intake officer may, after such inquiry and in accordance with this section:

(i) Authorize the filing of a petition;

(ii) Conduct a further investigation into the allegations of the complaint;

guilty." Hereinafter, we shall use the more precise term "not involved."

3. Previous appeals have dealt with whether the language of § 3–810(c), requiring a preliminary inquiry, is mandatory. In this appeal, the question is whether the interview is an indispensable component of the preliminary inquiry.

(iii) Propose an informal adjustment of the matter; or

(iv) Refuse authorization to file a petition.

In the case *sub judice*, the appellee's delinquency petition was dismissed because of the failure of the intake officer to conduct an intake interview with the appellee. In this appeal, we are asked to decide whether under the circumstances of this case an intake interview is an indispensable part of the mandated preliminary inquiry, or whether the goals and objectives of the preliminary inquiry can be accomplished absent such an interview.

■ The appellant argues that, since the appellee pled "not involved," there was no need for an intake interview because the appellee would obviously not be willing to pay restitution if he were to contend that he was not involved.[4] We disagree. The purpose of the preliminary inquiry and the intake interview is not to determine if the accused will be willing to pay restitution but to determine which course of action would be in the best interest of both the public and the child. The course of action which is in the best interest of both the public and the child is contemplated by the Legislature in enumerating specifically the procedures to be followed in juvenile causes.

In the case of *In re Patrick A.*, 70 Md.App. 191, 520 A.2d 743 (1987), the State's Attorney filed a delinquency petition before the matter was processed by an intake officer, and thus before there was a preliminary inquiry, as required by statute. In that case, we said:

> The Legislature designed a scheme whereby all delinquency allegations, except enumerated felonies, would be promptly inquired into by an intake officer. The intake officer, in light of

---

**4.** At oral argument, when asked what types of cases should not require an intake interview, the State suggested that we fashion a rule granting discretion to the intake officer to decide in which cases an interview would be fruitful; whether the intake officer had abused his/her discretion in not conducting an interview could be reviewed subsequently by the juvenile court at a hearing. Alternatively, the State urged us to decide that an intake interview is unnecessary in certain instances, *e.g.*, where, as here, the juvenile pleads "not involved" or where the juvenile has been before the court on numerous previous occasions. In response to our question as to what would render the case *sub judice* appropriate for the application of such a rule, the State refers us to the juvenile's plea and the gravity of the charges—assault with intent to maim, disfigure, and disable and assault and battery.

his or her training and in light of the revelations of the inquiry, would then proceed on a course of action.

....

[T]he Legislature has concluded that the additional information about background and intake involvement is crucial for the State to review *before* making the determination that a petition is in order rather than a diversionary resolution. Under the present statutory scheme, the State's Attorney *must* consider this information prior to proceeding by petition or otherwise. [Emphasis added.]

70 Md.App. at 201, 203, 520 A.2d 743.

The Court ultimately held that the actions of the State's Attorney were inappropriate, as they were in clear violation of the statute, and therefore dismissal of the complaint was a proper sanction. On appeal the State argued that the State's Attorney has "virtually unlimited discretion" in deciding whether to file a complaint against a juvenile, and therefore violation of the statute was not a ground for dismissal. *State v. In re Patrick A.,* 312 Md. 482, 486, 540 A.2d 810 (1988). In referring to the mandatory language of § 3–810, the Court of Appeals affirmed the ruling of this Court and stated:

We have stated on numerous occasions that under the settled principles of statutory construction the word "shall" is presumed to have mandatory meaning, and, unless its context indicates to the contrary, "denotes an imperative obligation inconsistent with the exercise of discretion."

....

We conclude the Legislature intended that the preliminary investigation by the intake officer be *mandatory* under the circumstances of this case.

*State v. In re Patrick A.,* 312 Md. at 490, 540 A.2d 810 (citations omitted) (emphasis added).

More recently, this Court has addressed essentially the same issue, in the case of *In re Steven B.,* 84 Md.App. 1, 578 A.2d 223 (1990). In that case, three juvenile appellees had delinquency petitions filed against them. The appellees moved for dismissal of their respective petitions, and their motions were granted. The trial court reasoned that, because their cases were not initially reviewed by an intake officer but were automatically forwarded to the State with a recommendation that petitions be filed, the intent of § 3–810(b)(3)(i) [5] had not been served. The trial court concluded

---

**5.** This statute has been revised as § 3–810(c)(3)(i) in the 1991 Cumulative Supplement.

that dismissal was the only viable alternative in light of our ruling in *In re Patrick A., supra.* The State appealed to this Court for review.

In affirming the trial court's ruling, we held:

DJS may not adopt a policy which ignores, limits, or restricts the intake officer's role in the juvenile cause process. *The intake officer should conduct a more detailed review of the case,* rather then [sic] merely classifying the offense allegedly committed by the juvenile as falling within the ambit of § 3–810(b)(3)(i) and automatically authorizing the filing of a petition charging delinquency. *The role of the intake officer is to review fully the case so as to determine whether it would be more appropriately handled through informal adjustment or even to recommend that no further action be taken.*

. . . .

We make clear that the Secretary of DJS is not free to ignore the purposes of the Juvenile Causes statute and adopt policies that are contrary to the legislative will even if those policies are considered by DJS to be more expedient.

*In re Steven B.,* 84 Md.App. at 8–9, 578 A.2d 223 (emphasis added).

We are told by appellee that the juvenile in this case is before the court for his first offense. Notwithstanding his expressed intention to plead "not involved," there is no impediment, legal or otherwise, to a change in the plea pursuant to avenues of disposing of the case other than adjudication. We alluded to the possibility of a diversionary resolution in *In re Patrick A., supra.* Posturing by a respondent or defendant and changes in the initial plea are not uncommon in the juvenile system or the adult criminal system. Moreover, the charges contained in a delinquency petition—as in a charging document in a criminal case—are not always reflective of the conduct actually proven. Thus, the severity of the allegations cannot serve to delimit when an intake interview is in the best interest of the child. Because of the myriad of possibilities of what information can be developed during the initial interview—some of which could be beneficial to the child and/or the public—we are not prepared to leave to the intake officer the unbridled discretion as to when the preliminary interview should be conducted while correspondingly saddling the juvenile court with the burden of conducting a hearing (as the State suggests) to determine whether there has been an abuse of discretion by the intake officer.

From the foregoing cases, it is manifest that the function of the intake officer is pivotal to the execution of the legislative

will. As stated by this Court and the Court of Appeals, it is incumbent upon the intake officer to review *all* of the evidence reasonably available to him or her before making a recommendation to the State's Attorney. In doing so, the officer not only adheres to the directives of this Court and the Court of Appeals, but the officer also fulfills the purpose of the statute (*i.e.,* to determine whether judicial action is in the best interest of the public or the child).

We therefore hold that ordinarily an intake interview is an essential part of the preliminary review unless the juvenile refuses to participate or is unable to participate. Absent such an interview, the intake officer may not have effectively made the preliminary inquiry required by § 3–810(c).

The question then arises whether dismissal of the petition is an appropriate sanction for such a failure. In approaching this question, we are guided by the fact that the statute *requires* the intake officer to make a preliminary investigation and that one purpose of the investigation is to determine whether judicial action is in the best interests of the child and the public. The obvious goal is to define those cases that do not need judicial intervention. Those cases, in other words, should not have been filed in juvenile court in the first instance. To declare, as the State would have us do,.that dismissal of petitions is not a permissible sanction for an intake officer's failure to make a proper preliminary investigation would render the requirement of such an investigation essentially meaningless and thus frustrate the clear legislative purpose. Dismissal *is* an appropriate sanction and indeed may be the *most* appropriate one in some instances.

We do not believe, however, that the dismissal is a necessary, automatic sanction that must be applied in every case where an intake interview was not held. If the intake officer can convince the court that, under all of the circumstances, an effective preliminary investigation was made without such an interview—that the facts were such that a petition would have been authorized no matter what may have emerged from an interview with the child—there would be no reason to dismiss the petition; such a sanction in that instance would serve no one's interest. When faced with a situation where an interview with the child was not held, the court should inquire as to the reason and, if not satisfied with the intake officer's explanation, may take such action as it believes appropriate under the circumstances, including dismissal of the petition.

Under the circumstances of this case, we hold that the trial court did not err in dismissing the appellee's delinquency petition.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY FREDERICK COUNTY.