REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 345

September Term, 2013

_____

IN RE: CRISTIAN A.

_____

Hotten,
Nazarian,
Eyler, James R.
    (Retired, Specially Assigned),

JJ.

_____

Opinion by Nazarian, J.

_____

Filed: August 29, 2014

Cristian A.[1] appeals the decision of the Circuit Court for Montgomery County, sitting as a juvenile court, to deny his motion to dismiss. The State charged Cristian with multiple counts, including second-degree assault and resisting and interfering with arrest, after an altercation with a police officer. Cristian moved to dismiss the State's complaint as untimely, and the court denied the motion. Because an intake officer properly authorized the filing of a delinquency petition, and because the circuit court correctly found that Cristian has not proven that the State's delay in filing the complaint caused him actual prejudice, we affirm.

## I. BACKGROUND

On October 26, 2012, shortly after Cristian's seventeenth birthday, his younger brother Ricardo was involved in a fight at a McDonald's in Silver Spring. Cristian was not implicated in the altercation and was not there when it occurred. Detective Jeffrey Bunge of the Montgomery County Police saw the fighting from the police station across the street. He witnessed Ricardo punching another individual and began to approach the scene.

The fight broke up as Detective Bunge arrived and the participants fled, including Ricardo. Detective Bunge and Officer Daniel Sassi found Ricardo approximately fifteen minutes later. They pursued him, and Detective Bunge eventually stopped him. Detective Bunge identified himself, drew his gun, and told Ricardo to get on the ground. Ricardo complied and as Detective Bunge began to put him in handcuffs, Cristian arrived at the

---

[1] We have adopted the appellant's spelling of "Cristian," although appellees refer to him as "Christian."

1

scene. Cristian had heard that his brother was involved in a fight and had come looking for him. Cristian ran toward Detective Bunge and Ricardo yelling, "That's my brother, that's my brother, leave him alone." Detective Bunge and Corporal Tony Galladora, who had come to assist the other officers, told Cristian to stop, but he continued to approach his brother and Detective Bunge. Corporal Galladora stopped Cristian and brought him to the ground. According to the testimony of Corporal Galladora and Officer Jeffrey Rea, Cristian got back up, assumed a fighting stance, and said, "What's up? What's up?" Officer Rea, who was standing behind Cristian, subdued him with a Taser and then arrested him.

The State filed a complaint (the "Complaint") with the Department of Juvenile Services ("DJS") on November 15, 2012, twenty days after Cristian's arrest on October 26.[2] A juvenile intake officer (the "Intake Officer") reviewed the Complaint that day and authorized the filing of a formal delinquency petition (the "Petition") without conducting an intake interview with Cristian. As luck would have it, Cristian was arrested for first-degree assault on that same day, November 15, 2012, in an unrelated incident (the "assault action"), although these charges were *nol prossed* on January 11, 2013.

The Intake Officer determined in the *delinquency* action that Cristian's detention in the *assault* action would likely last beyond the twenty-five-day timeline allotted for an intake officer to make a decision on whether to file a petition. *See* Md. Code (1974, 2013

---

[2] We discuss below an unrelated action ("the assault action") against Cristian that has relevance to this appeal. For clarity, we refer to the charges that are the subject of this appeal as the "delinquency charges" and the proceedings that followed as the "delinquency action."

Repl. Vol.), § 3-8A-10(c) of Courts & Judicial Proceedings Article ("CJP").[3] Accordingly, the Intake Officer authorized the filing of the Petition in keeping with CJP § 3-8A-10(c) and without conducting an intake interview with Cristian. The State filed the Petition on December 11, 2012, charging Cristian with second-degree assault, disorderly conduct, conspiracy to commit disorderly conduct, resisting and interfering with arrest, attempting to resist and interfere with arrest, and attempting to obstruct and hinder a police officer.

Cristian moved to dismiss on February 13, 2013. He argued that the State had violated CJP §3-8A-10(m), which requires law enforcement officers to file the initial complaint with DJS within fifteen days of when a juvenile is brought into custody.[4] The State

---

[3] The statute sets limits on the amount of time an intake officer has to make a decision after the filing of a complaint:

> (c)(1) Except as otherwise provided in this subsection, in considering the complaint, *the intake officer shall make an inquiry within 25 days* as to whether the court has jurisdiction and *whether judicial action is in the best interests of the public or the child.*

CJP § 3-8A-10(c) (emphasis added).

[4] The statute describes the fifteen-day deadline, but also permits dismissal only under certain circumstances:

> (m)(1) Except as provided in paragraph (2) of this subsection, within 15 days after a law enforcement officer takes a child into custody under this subtitle the law enforcement officer shall file a complaint with an intake officer.
>
> (2) If a child is referred to a diversion program, the law enforcement officer may file the complaint with an intake officer more than 30 days after but no later than 120 days after the law enforcement officer took the child into custody.

3

had filed the Complaint on November 15, 2012, twenty days after Cristian's arrest on October 26, 2012, and five days late[5] under the statute. Cristian argued that the State's delay in filing violated "statutory timeliness" and due process, and "caused [him] actual prejudice," since he was not provided the opportunity for an intake interview, which might have convinced the Intake Officer to refrain from authorizing the filing of the Petition.

At an adjudication hearing on February 15, 2013, the circuit court denied the motion to dismiss, noting that "it's just too speculative to think that the case would have been not petitioned and there's really no showing of any prejudice to the defense. So if it was delayed four days or six days, or whatever, I don't think that's sufficient in and of itself to dismiss it." The circuit court found that Cristian was "involved"[6] in attempting to interfere with arrest and attempting to obstruct and hinder a police officer performing his lawful duties. At the disposition hearing on March 7, 2013, the court sustained Cristian's probation pursuant to the recommendation of DJS. Cristian filed a timely notice of appeal.

---

> (n) The court may dismiss a petition or a peace order request for failure to comply with this section *only if the respondent has demonstrated actual prejudice.*

CJP § 3-8A-10 (m)–(n) (emphasis added).

[5] At the adjudication hearing, counsel for Cristian argued that the delay was five days and later that the delay was six days. The State concedes that the Complaint was filed late, though it contends that the delay was only four days.

[6] "In juvenile proceedings the more precise term to use when referring to the plea of the respondent is 'not involved' [or involved] as opposed to 'not guilty' [or guilty]." *In re Kevin Eugene C.*, 90 Md. App. 85, 87–88 n.2 (1992).

4

## II. DISCUSSION

Although the parties have focused largely on whether or when Cristian should have been interviewed, our analysis, and the Intake Officer's ultimate responsibility, revolves around the more fundamental question of whether the officer conducted an appropriate investigation of the juvenile's case before recommending that a petition be filed. Because we are satisfied with the Intake Officer's investigation and rationale for deciding not to conduct an intake interview, and because Cristian's claims of actual prejudice are too attenuated, we affirm.

After a juvenile is taken into custody, the State may file a complaint with DJS. The complaint must be filed within fifteen days from the date a juvenile is arrested. *See* CJP § 3-8A-10(m). In turn, the intake officer must review the complaint "within 25 days as to whether the court has jurisdiction and whether judicial action is in the best interests of the public or the child." CJP § 3-8A-10(c)(1). As part of this inquiry, "it is incumbent upon the intake officer to review *all* of the evidence reasonably available to him or her. . . . *Ordinarily* an intake interview is an essential part of the preliminary review unless the juvenile refuses to participate or is unable to participate." *In re Kevin Eugene C.*, 90 Md. App. 85, 92 (1992) (second emphasis added). After this investigation, and within the twenty-five-day time period, the intake officer makes a recommendation to the State's Attorney and may "[a]uthorize the filing of a petition," "[p]ropose an informal adjustment of the matter," or decide not to authorize a petition at all. CJP § 3-8A-10(c)(3)(i)–(iii).[7] Violations of CJP

---

[7] The statute describes the intake officer's potential courses of action after receiving a complaint and the timeframe for making a decision:

§ 3-8A-10 may result in dismissal of a petition, but "*only* if the respondent has demonstrated actual prejudice." CJP § 3-8A-10(n) (emphasis added).

Because Cristian's claims include a constitutional dimension (he alleges a violation of his due process rights), we review his contentions against "our own independent constitutional analysis." *Glover v. State*, 368 Md. 211, 220 (2002) (citing *State v. Bailey*, 319 Md. 392, 415 (1990)); *see also Butler v. State*, 214 Md. App. 635, 655 (2013). "We perform a *de novo* constitutional appraisal in light of the particular facts of the case at hand; in so doing, we accept a lower court's findings of fact unless clearly erroneous." *Glover*, 368 Md. at 221.

Cristian argues that the State's failure to file a timely complaint under CJP § 3-8A-10(m) caused him actual prejudice.[8] He contends that had the State filed the Complaint

---

> Subject to the provisions of § 3-8A-10.1 of this subtitle, in accordance with this section, the intake officer may, after such inquiry and within 25 days of receiving the complaint:
>
> (i) Authorize the filing of a petition or a peace order request or both;
> (ii) Propose an informal adjustment of the matter; or
> (iii) Refuse authorization to file a petition or a peace order request or both.

CJP § 3-8A-10(c)(3).

[8] Cristian phrases the question presented as follows:

> Did the [Circuit Court for Montgomery County] err in denying [Cristian's] motion to dismiss where the State failed to comply with the time requirements of § 3-8A-10 of the Courts & Judicial Proceedings Article?

within the statute's timeframe, he could have participated in an intake interview and this interview might have convinced the Intake Officer not to authorize the filing of the Petition.

The Intake Officer reviewed the belatedly-submitted Complaint and decided to authorize the filing of the Petition without interviewing Cristian. The Intake Officer anticipated that Cristian couldn't participate in an interview, especially given the twenty-five-day timeframe allotted for a decision on whether or not to file a petition, because of Cristian's arrest, which the officer believed would result in a detention. *See* CJP § 3-8A-10(c)(3); *see also Kevin Eugene C.*, 90 Md. App. at 91-92. Put differently, the Intake Officer assumed Cristian would be unavailable for an interview since he had been arrested.

Cristian contends that he *was* in fact available for an intake interview up until his arrest on November 15, 2012.[9] He claims he was prejudiced by the delay in filing the Complaint, which deprived him of an interview, because there was "at least a reasonable possibility that a delinquency petition would not have been filed had an intake hearing been conducted." Cristian claims that in an intake interview, "he would have [had] the oppor-

---

[9] Cristian speculates about both the meeting taking place and what he believes its outcome could have been:

> [He] was not arrested in the adult case (in which the charges were later *nol prossed*) until the date the complaint in the juvenile case was filed, November 15, 2012. Prior to that date, [Cristian], who was released to his mother following the incident on October 26, could have met with an intake officer, who, in turn, could have proposed an informal adjustment or refused to authorize the filing of a petition.

(Emphasis added.)

tunity to persuade the [Intake Officer] to pursue an informal adjustment or deny authorization for the filing of a petition." He points to several mitigating factors that he would have discussed during the intake interview, including his abusive upbringing and his attempts to protect his younger brother, and that he contends may have convinced the Intake Officer not to file a petition. Cristian admits, however, that "there is no guarantee that the [Intake Officer] would have taken a different course had there been an opportunity for an intake hearing."

Picking up on this concession, the State claims that Cristian has "failed to establish actual prejudice." The State contends that Cristian was at fault for his inability to participate in an intake hearing, given the pending assault action, and that the Intake Officer already "was aware of all the circumstances surrounding [Cristian's] alleged involvement in the alleged delinquent act, including his upbringing, his family situation, his history in the juvenile system, and his new felony assault charges."

We conclude that the Intake Officer in this case met his responsibility to review Cristian's case, even though he did not conduct an interview, and we agree with the State that Cristian has failed to establish actual prejudice. *First*, an intake officer's responsibility is to "review fully the case so as to determine whether it would be more appropriately handled through informal adjustment or even to recommend that no further action be taken." *In re Steven B.*, 84 Md. App. 1, 8 (1990). An intake interview may be a part of this review process, but the core requirement is that the officer conduct a thorough *investigation* of the juvenile's case.

8

The determination of whether dismissal of a petition is warranted in the absence of an intake interview depends on whether "under the circumstances . . . an intake interview is an indispensable part of the mandated preliminary inquiry, or whether the goals and objectives of the preliminary inquiry can be accomplished absent such an interview." *Kevin Eugene C.*, 90 Md. App. at 89. "When faced with a situation where an interview with the child was not held, the court should inquire as to the reason and, if not satisfied with the intake officer's explanation, may take such action as it believes appropriate under the circumstances, including dismissal of the petition." *Id.* at 92.

We have held that an intake interview is not required if the "juvenile refuses to participate or is unable to participate," and have noted that dismissal is *not* "a necessary, automatic sanction that must be applied in every case where an intake interview was not held." *Id.* at 93. But "the purpose of Maryland's juvenile statute [to rehabilitate] is not ordinarily best served by dismissal of the proceedings," *In re Keith W.*, 310 Md. 99, 106 (1987), and "[o]nly the most extraordinary and egregious circumstances should be allowed to dictate dismissal as the sanction for [a] violation of a procedural rule." *Id.* at 109; *see also In re Timothy C.*, 376 Md. 414, 434–435 (2003). Dismissal is appropriate if the State deliberately files a petition before an intake interview is conducted and without taking into account input from the Juvenile Services Administration. *State v. Patrick A.*, 312 Md. 482, 492–93 (1988). Similarly, a policy that "automatically recommend[s]" that the State file a petition, regardless of intake interviews, circumvents the statutory purpose. *Steven B.*, 84 Md. App. at 8 (affirming dismissal of petitions); *see also In re Keith G.*, 325 Md. 538, 546 (1992) (reversing dismissal and distinguishing *Patrick A.*, 312 Md. 482 and *Steven B.*, 84

9

Md. App. 1, respectively). Overall, though, the rehabilitative purpose of juvenile statutes may well be better served by erring on the side of engagement rather than reflexive procedural dismissal:

> [T]he foremost consideration in the disposition of a juvenile proceeding should be a course of treatment and rehabilitation best suited to promote the full growth and development of the child. . . . [T]he judge must keep in mind the overriding purpose of the juvenile statute along with the fact that this purpose will ordinarily not be served by dismissal of the juvenile proceeding.

*Keith W.*, 310 Md. at 109 (affirming lower court's refusal to dismiss a petition based on a violation of Maryland Rule 11-114, which prescribes the timing requirements for adjudicatory hearings).

This case presents no procedural failing or inappropriate policy that justified dismissal. The State did not file the Petition in Cristian's case until after the Intake Officer investigated the allegations and made a recommendation to proceed. The Intake Officer did not conduct an intake interview, but only because he believed Cristian would be unavailable due to the pending charges in the assault action. This case does not present an "extraordinary circumstance" warranting dismissal of the Petition simply because an intake interview was not conducted. *See Keith W.*, 310 Md. at 109. To the contrary, the record reveals that Cristian had a lengthy history with DJS leading up to this incident,[10] and the

---

[10] Before the incidents of October 26, 2012, Cristian had been put in the care of his mother under numerous conditions including "[being] placed on a Global Positioning System (GPS) and abid[ing] by all conditions," and "[s]ubmit[ting] to random urinalysis." Cristian subsequently "had two alcohol citations" and "was required to complete a Screening and Assessment Services for Children and Adolescents (SASCA)." He had also been participating in a drug treatment program as of October 1, 2012.

Intake Officer likely was already aware of Cristian's history and the circumstances surrounding this particular arrest. The Intake Officer readily could conclude from this record that Cristian needed the services DJS could provide him.[11]  His decision to authorize the Petition without an intake interview continued DJS's engagement with him, and the circuit court judge ultimately found that Cristian "is still . . . amenable to services" and properly continued Cristian's probation, pursuant to DJS's recommendation.

*Second*, even if Cristian was entitled to an intake interview and could have participated in one, there is no evidence that the five-day delay in the initial filing of the Complaint caused him actual prejudice. Under CJP § 3-8A-10(n), a court "may dismiss a petition or a peace order request for failure to comply with this section[, in this case filing the Complaint beyond the fifteen-day window,] *only if the respondent has demonstrated actual prejudice.*"  CJP § 3-8A-10(n) (emphasis added).

Although the statute does not define "actual prejudice," we look to the related area of speedy trial violations in criminal prosecutions.[12] In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court established four factors, including prejudice, that we analyze to

---

[11] In addition to Cristian's run-ins with the law documented in Note 10, in November 2013, Cristian also faced the adult charges for first-degree assault (later *nol prossed*) that the Intake Officer referenced here. In March 2013, Cristian was again arrested on first-degree assault charges, as well as conspiracy and participation in a criminal gang. On April 30, 2013, DJS filed a request for a statutory emergency hearing because Cristian's whereabouts were unknown.

[12] This analysis is consistent with Cristian's arguments below, in which he invoked *Boone v. State*, 55 Md. App. 663 (1983), which in turn cites the three factors for establishing prejudice from *Brady v. State*, 291 Md. 261, 267 (1981). *Boone,* 55 Md. App. at 670; *see also Barker v. Wingo*, 407 U.S. 514, 532 (1972).

determine whether a defendant's right to a speedy trial has been violated. *Id.* at 530. Within the prejudice analysis, the Court indicated three "interests of defendants which the speedy trial right was designed to protect," namely: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* at 532; *see also State v. Bailey*, 319 Md. 392, 415 (1990) (noting that "in the determination of the speedy trial question, each case rests on its own facts[, and the] determination must be made upon an overall view of the circumstances peculiar to each particular case, keeping in mind not only the rights of the defendant but also the interests of society."); *Boone*, 55 Md. App. 663, 670 (1983); *Butler v. State*, 214 Md. App. 635, 655 (2013). The Court also recognized that out of these interests, the defendant's need to build a strong case is paramount because an impaired defense could threaten "the fairness of the entire system." *Barker*, 407 U.S. at 532; *see also Wilson v. State*, 148 Md. App. 601, 639 (2002) ("The most important factor establishing prejudice . . . is the inability to prepare one's defense."). Maryland courts have adopted the *Barker* test in both criminal and juvenile proceedings. *See, e.g.*, *In re Thomas J.*, 372 Md. 50, 77 (2002); *Wilson*, 148 Md. App. at 639.

Cristian does not argue that he has faced oppressive pretrial incarceration, and he conceded that the five-day delay in the filing of the Complaint was "not an impairment to [his] defense." He did contend at the adjudicatory hearing that waiting for the State to file the Complaint caused him "anxiety and nervousness," though he does not mention this point in his brief. His primary argument is that had he had an opportunity to participate in

12

an intake hearing, he might have persuaded the Intake Officer not to recommend the Petition at all. Beyond hopefulness or speculation, nothing in the record supports this argument and, as we discussed above, there is ample evidence to support the Intake Officer's decision to recommend the Petition. Cristian has admitted that he was prejudiced *only* if the Intake Officer would not have submitted the Petition after conducting an intake hearing with him, and the link between what could have happened and actual prejudice is too hypothetical and attenuated.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**